## NORMAN HALL

*v.*

## THE ROSE HILL AND EVANSTON ROAD COMPANY.

1. WITNESS—*credibility.* When a witness testifies that he previously made an affidavit relating to matters in dispute, simply on the information of others, without stating that it was made on information, and it further appears that his memory is defective, or that he is unfair and biased in his testimony, and he is flatly contradicted in some of his most important statements, by other witnesses, the jury will be fully warranted in disregarding his testimony.

2. ASSIGNMENT—*of stock of railway company.* Certificates of stock in a railway company, unlike negotiable paper, can only be assigned by an act of the company, or in pursuance of a by-law.

3. SAME—*issue of new certificate of stock.* If the purchaser of stock of a railway company applies to procure a transfer of the same to him, and the directors order the transfer to him, and new certificates to be issued to him, he will become an innocent holder, if he acts in good faith, and the company will be estopped to deny that the stock thus issued is valid.

4. SAME—*issue of new, without taking up old certificates of stock.* If the secretary of a railway company issues new certificates of stock to one claiming to have purchased shares therein, without taking up or cancelling the original, the new certificates will be invalid.

5. EVIDENCE—*certificate of stock, prima facie.* The certificate of stock in a railway company, issued by its secretary, is *prima facie* evidence that it was regularly issued, but this presumption may be overcome by other evidence, as, by showing that no order was passed for its issue. If the order was passed, and not entered of record, that may be shown by the holder.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding.

674 . HALL *v.* ROSE HILL, ETC., ROAD CO. [Sept. T.

Opinion of the Court.

Mr. GEORGE WILLARD, for the appellant.

Mr. J. V. LEMOYNE, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Appellant, claiming to hold and be the owner of five shares in the stock of appellee's company, brought suit for the recovery of a dividend of $10 on each share. The defense interposed was, that these shares were spurious, and issued without authority of the board of directors. A trial was had by the court and a jury, resulting in a verdict and judgment in favor of the company. A motion for a new trial was interposed, but overruled by the court, and the case is brought here on appeal.

The question raised by the record is one of fact, except the refusal of the court to give two of appellant's instructions. The witness upon whom appellant relied to prove his case, seems to have had a defective memory, or at the least to have testified under a strong bias. His version of the matter is, to say the least, confused and contradictory, with a number of corrections of previous statements. Again, he swears that he previously swore to an affidavit, in reference to this stock, simply on what he says was information derived from others, without knowing the facts, and yet he did not state that it was on such information.

Such admitted recklessness on the part of a witness goes a great way to impair confidence in his evidence, and, when added to his defective memory or unfairness in giving his testimony, it fails, on paper, to impress us with any great confidence in its weight or force. Again, he is flatly contradicted in some of his most important statements, by other witnesses, who carefully examined the books of the company, and had every facility of knowing their contents, which he possessed, and we are fully satisfied that the jury were entirely warranted in disregarding his testimony

It seems not to be disputed, that the stock in question was issued to replace shares that had been issued to other parties, and claimed to have been assigned, but never cancelled. Whilst Sherman, the secretary, swears that the board of directors ordered him, at the meeting on the 3d of June, to issue the certificate to appellant, two other witnesses swear there was no meeting on the 3d of June, but that it was on the next day. They also state positively that they had examined the minutes of that meeting, and that nothing of the kind appears in its proceedings. In this he is flatly contradicted by two apparently credible witnesses, whose evidence is not assailed.

The certificates of stock issued by the company could only, by their own terms, be transferred on the books of the company on the surrender of the certificate itself. In fact, the secretary of the company had no power, unless authorized by its by-laws, to issue stock or transfer it, without an order of the board of directors. It is, no doubt, true, that the fact that the certificate is held by an individual is *prima facie* evidence that it was regularly issued. But that presumption is overcome by showing that it was issued without authority, which the jury have found was done in this case. These certificates of stock are unlike negotiable paper. They can only be assigned by an act of the company, and when the proposed purchaser applies to procure the transfer, he can always learn if there is a defense, or that the stock is illegal. If, when he applies, the directors order the transfer to be made, if not himself acting in bad faith, he becomes an innocent holder, and the company are thus estopped to deny that the stock thus issued is valid.

If, as seems to be true in this case, original stock was outstanding for the same amount, and for which this was issued, and that was the only consideration, it would manifestly be invalid. The stock first issued, until taken up, or at least canceled, would be still valid and binding. And we understand Turner as saying that he had purchased that stock of Benson, of whom appellant claims to have derived this stock.

Again, it is not controverted that there was written opposite appellant's shares in the list of stock issued, the word "fraudulent." This seems to indicate that the company so regarded it. All the evidence considered, we are clearly of opinion that it sustains the verdict.

The fifth instruction asked by appellant and refused by the court, does not accurately state the law. It was essential that the stock should have appeared by the records of the company, or by a by-law, to have been regularly issued. This was a suit by the person to whom the certificate was issued, and he was bound to know whether the stock was legally transferred, and his certificate informed him that such stock could only be transferred by record in the books of the company; and, whilst that certificate was *prima facie* evidence that it had been regularly transferred, still that was overcome by showing that it did not appear in the record of the proceedings of the company; and, to have restored his *prima facie* case, he should have proved that the order for the transfer was, in fact, passed, but never reduced to record. This he attempted, but the jury have found he failed to do.

As to the sixth of appellant's instructions, we think it was properly refused. The directors of the company were the trustees of the shareholders, intrusted with the management of its affairs for their best interest. They had no right to issue stock to any but subscribers who had paid for it, nor to make transfers of stock unless by the consent of the former owner, and upon his stock being canceled. To do otherwise would be a fraud on the shareholders, and a mere doubt whether such a transfer would or not be right, would not be a justification for issuing double stock. They had no power to act, unless the person to whom the transfer was made had the legal right to the certificate. It does not appear how appellant became possessed of the certificate on which this new certificate was issued. It seems to have been assigned in blank, no name being inserted.

The case seems to have been fairly presented to the jury, and we think they were fully warranted in finding the verdict they did, and the judgment of the court below must be affirmed.

*Judgment affirmed.*