MANHATTAN BEACH Co. *v.* HARNED and others.

*(Circuit Court, S. D. New York. May 8, 1886.)*

1. CORPORATIONS—CAPITAL STOCK—CERTIFICATES—EFFECT.
    Certificates of stock, issued as evidence of the ownership of the shares, are the *indicia* of title, and are treated as representing the shares themselves.
2. SAME—ASSIGNMENT OF CERTIFICATE—RESULTING EQUITIES.
    Although the assignment of a certificate of stock can pass only the beneficial interest of the assignor, the rights of the assignee will be protected at law and in equity as if he were the purchaser of the legal title to tangible property or negotiable paper.
3. SAME—RIGHTS OF PURCHASER OF STOCK—RELIANCE UPON DILIGENCE OF CORPORATION—RECITALS IN CERTIFICATE—FRAUDULENT ISSUE BY AGENT.
    The purchaser of stock has a right to rely upon the diligence of the corporation, and to put faith in the recitals contained in the certificate issued by its agents while acting within the general scope of their powers, even though it afterwards appears that such certificate was issued through the negligence or malfeasance of such agents.
4. SAME—BONA FIDE PURCHASER—RIGHT TO CERTIFICATE ISSUED UPON SURRENDER OF ONE FRAUDULENTLY ISSUED BY AGENT.
    The complainant, through the fraud of an employe, issued a certificate of stock in due form reciting that G. was the owner of 100 shares. G. was not

a stockholder. The name of G. was simulated to a transfer of the certificate. The defendants bought the certificate for value. Thereafter they presented it to the complainant, surrendered it, and received a new certificate. They were not notified of the fraud until the employe had absconded. *Held*, that defendants could not rely upon an estoppel upon the purchase of the certificate because the issuing of the certificate by complainant was not the proximate cause of injury. But when complainant issued the new certificate to defendants without discovering and notifying defendants of the fraud until the forger had absconded, an estoppel arose, because defendants, in reliance on the conduct, was induced to omit taking proceedings to obtain restitution.

*Alfred C. Chapin*, for complainant.
*F. F. Marbury* and *John R. Dos Passos*, for defendants.

WALLACE, J. This bill is filed by the complainant, a Connecticut corporation, to restrain the defendants from transferring, and to compel them to surrender to complainant, a certificate for 100 shares of the complainant's capital stock, which was delivered by complainant to defendants on or about the twelfth day of February, 1884.

The following facts appear by the pleadings and proofs: In October, 1883, certificates of stock, representing 80 per cent. of the whole capital stock of the complainant, had been issued and delivered by it to subscribers, the remaining 20 per cent., consisting of 10,000 shares, being still held by it. In that month one Fullerton, who was a clerk of the complainant, in fraud of the corporation, filled out a number of blank certificates, inserted in them the names of fictitious persons, together with the proper recitals to show that they were holders of a specified number of shares of stock, presented the certificates to the proper officers of the complainant for their signatures, obtained their signatures, and subsequently negotiated the certificates with parties unknown. Among these certificates was one in which the name of Charles Gray had been inserted, with the recital that he was the owner of 100 shares of the capital stock of the corporation, transferable on its books on surrender of the certificate. It was attested by the president and treasurer of the company, and was in all respects regular in form. Upon its back was an assignment and power of attorney in blank authorizing the transfer of the shares. In February, 1884, the defendants, who were members of the New York Stock Exchange, bought in the usual way at the exchange 100 shares of the stock of the corporation, and the day after the purchase received a certificate from the vendors in accordance with the usages of the exchange, and paid the purchase price. The certificate delivered to them was the one which had been fraudulently prepared and put out by Fullerton, containing the name of Gray. The name of Gray was written under the assignment and power of attorney on the back of the certificate, and the signature was authenticated by the signatures of the brokers of whom the defendants purchased the stock. The defendants accepted the certificate in reliance upon this authentication as to the genuineness of Gray's signature. In order to have the stock transferred to themselves on the books of the complainant, the

defendants presented the certificate a day or so after they received it at the office of the complainant for surrender. It was received by the complainant's agents, who retained it for a day or two, transferred the shares upon the books of the corporation to the defendants, and delivered to the defendants a new certificate, which is the one in controversy. About a month thereafter Fullerton absconded, and his fraudulent practices were discovered. Thereafter the officers of the complainant notified the defendants of the facts discovered, and demanded the return and surrender of the certificate. This bill was filed early in May, 1884.

The case turns upon the law of equitable estoppel. Shares of corporate stock are dealt with in the market like negotiable paper or chattels; and the certificates issued as evidence of the ownership of the shares are the *indicia* of title, and are treated as representing the shares themselves. The title to a certificate implies the title to the shares themselves, and passes to a purchaser by a delivery of the certificate indorsed in blank. Although the assignment of a certificate can only pass the beneficial interest of the assignor, the rights of the assignee will be protected at law and in equity as if he were the purchaser of the legal title to tangible property or negotiable paper. If the defendants had acquired title from Gray, the complainants could not be permitted to deny that they had obtained a valid title to the shares. A certificate of shares, properly issued by a corporation having power to issue stock certificates, is an affirmation by the corporation to all who may innocently purchase the certificate that the person to whom it is issued is the owner of the number of shares of the capital stock of the corporation specified in the instrument. *Holbrook* v. *Zinc Co.*, 57 N. Y. 616. The purchaser need not inquire further to ascertain whether there is any infirmity in the title of the person named as owner in the certificate. It is wholly within the power of the agents of the corporation to ascertain whether the person to whom a certificate has been issued has the legal title to the shares, when such title is only transferable upon the books of the corporation; and it is their duty towards every person who may become a purchaser upon the faith of a certificate to exercise due diligence in this behalf. *Telegraph Co.* v. *Davenport*, 97 U. S. 369. The purchaser may reasonably repose upon the belief that this duty has been faithfully discharged. Hence it follows that if by their negligence, or even by their malfeasance, a certificate has been issued by agents of the corporation while acting within the general scope of their powers, the purchaser has a right to rely upon the truth of the recitals, and to treat them as the formal representation of the corporation, made by those who are entitled to act and speak for it in the particular transaction. *Bank of Kentucky* v. *Schuylkill Bank*, 1 Pars. Eq. Cas. 180; *New York & N. H. R. Co.* v. *Schuyler*, 34 N. Y. 30; *Hall* v. *Rose Hill R. Co.*, 70 Ill. 673; *Shaw* v. *Port Philip & Colonial Min. Co.*, 50 Law T. R. (N. S.) 685. Those who have acted

upon the faith of such an affirmation may insist that it shall not be retracted to their prejudice by the party responsible for it, because it would be a breach of good faith to do so. The rule is so familiar that it is unnecessary to refer to the authorities at large. A pertinent illustration is found in the case of *Machinists' Nat. Bank* v. *Field*, 126 Mass. 345, where shares of a corporation had been purchased by a defendant, who received a certificate issued by the corporation upon the surrender of an outstanding one upon which the assignment and power of attorney of the holder had been forged; and it was held that the defendant could not be ordered to return his certificate, because he purchased the shares in good faith, and for a valuable consideration, and the certificate issued to him before he parted with his money was, as against the corporation, conclusive evidence of his title.

Upon the facts here, it would be plain that the complainant could not be heard to deny that Gray was the owner of the shares bought by the defendants, if the latter had acquired title from or through Gray. But an estoppel *in pais* only inures to the benefit of a party who can properly assert that the representation or conduct by which he has been misled was the direct and legitimate cause of his misfortune. The affirmation of the spurious certificate that Gray was the owner of the shares was not the proximate cause of any loss or injury to the defendants. Without the supervening circumstance of a purchase from Gray, it would not have prejudiced them. The consequences of a purchase which could not have been consummated without the forgery or fraud of the person who prepared the spurious assignment and power of attorney—an act for which the complainant is not responsible—cannot be attributed to the complainant. If the defendants could not maintain an action against the complainant to recover damages for their loss, they cannot rely upon an estoppel *in pais* as a defense to the cause of action. *Swan* v. *North British Co.*, 7 Hurl. & N. 603; S. C. 2 Hurl. & C. 175; *McMaster* v. *Insurance Co.*, 55 N. Y. 222.

Although the defendants cannot rely upon an estoppel solely by reason of the purchase of the spurious certificate, it remains to consider whether the complainant is not estopped nevertheless by reason of the transactions between the parties subsequent to the purchase. At the time when the defendants presented the spurious certificate to the officers of the complainant to have it surrendered, and to have the shares transferred to them on the books of the complainant, Fullerton was in the employ of the complainant. If the agents of the complainant had exercised due care to ascertain whether defendants were entitled to be treated as stockholders, they might or might not have succeeded in discovering the crime of Fullerton, and the deception in which they had negligently participated. However this might have been, when they were informed that the defendants had purchased a certificate to which they had given currency, they were put upon in-

quiry to ascertain whether it was a genuine one. The means of knowledge were within their reach, and were not available to the defendant; and it was their duty to ascertain the truth, and promptly communicate it to the defendants, in order that the latter might not be further prejudiced. The defendants were justified in assuming that this duty would be fulfilled. When the complainant's officers, after waiting a reasonable time for investigation, issued the new certificate, they not only reaffirmed the authenticity of the surrendered certificate, but recognized the defendant's title to the shares, and thereby authorized defendants to repose, without further inquiry, upon the validity of the title they had acquired. Fullerton did not abscond for several weeks after the new certificate had been delivered to the defendants. During this time he was within reach of process, and the defendants had the means of coercing restitution by civil and criminal proceedings against him. It is not to be doubted that they would have followed the ordinary incentives to retrieve their loss, and it cannot be said that the use of the means within their power would have been unavailing. When they were informed that the certificate they had purchased was a forgery or a fraud, the criminal had escaped, and they had lost the opportunity of seeking restitution by the pursuit of the swindler. It is not essential to an estoppel *in pais* that the person who has been misled by the conduct or declarations of another shall have taken any affirmative action in reliance upon the conduct or declaration; it suffices if he has been led to omit what he would have otherwise done, and might have done effectively, to protect himself. This has been decided in many adjudged cases, but those only will be referred to in which the estoppel was placed upon the ground that the person who had relied upon the conduct of another by doing so had lost the opportunity to institute civil or criminal proceedings against the original author of the wrong.

In *Knights* v. *Wiffen*, L. R. 5 Q. B. 660, a person had purchased a quantity of barley which was in the possession of the defendant from one who had no title to it, and upon the purchase received a delivery order directed to the defendant. Upon being shown the delivery order the defendant said it was all right. The vendor became a bankrupt before the delivery of the barley. It was held that although the purchaser had paid for the barley before showing the delivery order to the defendant, the defendant was estopped from setting up title to the barley, because had it not been for his recognition of the order the purchaser might have resorted to his vendor before the latter's bankruptcy. BLACKBURN, J., said: "Very likely he might not have derived much benefit if he had done so, but he had a right to do it."

In *Casco Bank* v. *Keene*, 53 Me. 103, the plaintiff held a note purporting to have been made by the defendant. Hearing that the note was a forgery, he took it to the defendant, who admitted it to be genuine. The plaintiff refrained from any attempt to secure payment of the person from whom he got the note until it was too late to pursue him

successfully. It was held that if the plaintiff, relying upon the admission of the defendant, was induced to refrain from obtaining security by the arrest of the one from whom the note was obtained, or by attachment of his property, the defendant would be estopped from showing the note to be a forgery.

In *Continental Nat. Bank* v. *Bank of Com.*, 50 N. Y. 575, a check purporting to be certified by the teller of a bank was presented to the bank, and the authenticity of the certificate was admitted. The owner of the check had advanced the money on it shortly before it was presented at the bank, and before the certification was discovered to be a forgery the person who had received the money on the check had absconded. It was held to be too late for the bank to retract the admission that the certificate was genuine. FOLGER, J., delivering the opinion of the court, said: "Arrest and detention of the swindler is a powerful means in coercing restoration."

In *Fall River Nat. Bank* v. *Buffinton*, 97 Mass. 498, the plaintiff in a suit upon a note relied upon an estoppel founded upon the representation of the defendant, who was an indorser of the genuineness of his signature, the representation having been made after the plaintiff had discounted the note. A prior indorser, who had procured the note to be discounted, left the state shortly after the defendant made the representation, and before the maturity of the note. It was held that the defendant was estopped from denying the genuineness of his signature, and that it was immaterial whether the plaintiff's actual damage in relying upon the representation was more or less, but that it was sufficient that plaintiff had lost an opportunity to proceed against the prior indorser.

These cases are all quoted with approval in *Leather Manuf'rs' Bank* v. *Morgan*, 6 Sup. Ct. Rep. 657, (U. S. Sup. Ct., October term, 1885.) That was a suit brought against a bank by a depositor to recover the amount of certain altered checks of the plaintiff. The alterations had been made by a clerk of the plaintiff, who obtained the money on the checks. The checks were charged to the plaintiff by the bank in the plaintiff's pass-book, from time to time, as they were paid. HARLAN, J., delivering the opinion of the court, says:

"If the depositor was guilty of negligence in not discovering and giving notice of the fraud of his clerk, then the bank was thereby prejudiced, because it was prevented from taking steps, by the arrest of the criminal, or by the attachment of his property, or other form of proceeding, to compel restitution. It is not necessary that it should be made to appear by evidence that benefit would certainly have accrued to the bank from an attempt to secure payment from the criminal. As the right to seek and compel restoration and payment from the person committing the forgery was in itself a valuable one, it is sufficient if it appears that the bank, by reason of the negligence of the depositor, was prevented from promptly, and it may be effectively, exercising it."

The case of *Voorhis* v. *Olmstead*, 66 N. Y. 113, is apposite. In that case a corporation made a loan upon the faith of a pledge of certain .

.cotton by a person to whom it did not belong, who gave an order upon the warehouseman with whom it was stored. Subsequently, the warehouseman, with the consent of the true owner, gave to the corporation an ordinary warehouse receipt for the cotton. The court held that the true owner, having consented to the issuance of the receipt by the warehouseman, should be held to have assented to the pledge; that the corporation had a right to repose upon the receipt as evidence of the pledgeor's title; and that its position was altered by relying on the receipt, because if it had not been given the corporation might have resorted to process for the recovery of its loan; and that the true owner was estopped from claiming title to the cotton.

These authorities justify the conclusion that, notwithstanding the defendants had already parted with their money, and had no legal redress against the complainants at the time they presented the spurious certificate for surrender, they may insist upon an estoppel, because their situation was altered by the act of the complainants in recognizing the validity of the certificate, and in consequence they were induced to forego the remedy which they could otherwise have adopted to save themselves from loss.

The bill is dismissed.