## WILLIAM FREEMAN *versus* DANIEL HARWOOD.

One who holds property in trust cannot be the purchaser thereof at a sale by operation of law.

Shares of stock in an incorporated company were conveyed by the plaintiff to the defendant as collateral security for a debt, which was afterwards paid. The shares, while yet standing in the defendant's name, were assessed by virtue of an Act of the Legislature, and, for non-payment of the assessment, were sold at auction and struck off to the defendant; —

*Held*, 1st, that the sale was invalid; 2d, that the defendant was liable in trover for the value of the shares at the time of the alleged sale, and the dividends he had received thereon, and interest, deducting the amount of the assessments and expenses of sale.

ON REPORT.

THE case is fully stated in the opinion.

Various questions were raised by the counsel, but the Court found one decisive of the case. An abstract of the arguments upon the other points is therefore omitted.

*J. Granger*, for plaintiff.

The defendant held the property in trust. It is well settled that a trustee cannot, directly or indirectly, be a pur-

chaser of the trust property. 1 Hill. Ab., 236, 237, 238, 239; 14 U. S. Digest, 517, pl. 31·; *Heywood* v. *Ellis*, 13 Pick., 372; *Pratt* v. *Thornton*, 28 Maine, 355.

*P. Thacher*, for defendant.

The property was not sold as trust property. The sale was *by the corporation*, under the authority of the Legislature. The authorities cited for plaintiff are cases in which the trust property was attempted to be sold by the trustee, and purchased, directly or indirectly, by him. But these shares were not sold by the defendant.

The opinion of the Court was drawn up by

TENNEY, C. J.—This action is trover for the alleged conversion of forty-two shares of stock, in the Machias Water Power and Mill Company, commenced on July 23, 1853. The general issue was pleaded and joined, with a brief statement, that the shares in question were assigned to the defendant by Joseph M. Gerrish, at the plaintiff's request, on January 18, 1841, as collateral security to the defendant, for his accepting a draft for the plaintiff's accommodation, on that day, for the sum of $280, in sixty days, which the defendant paid at maturity; that the said shares having been assessed, by an Act of the Legislature, and under votes of the corporation, in a tax of ten dollars each, and having been advertised according to law, and the plaintiff having, after notice, neglected to pay said tax, and the cash so having been advanced, having never been paid by the plaintiff, the shares were sold at public auction in Boston, on March 19, 1845, and the defendant, being the highest bidder therefor, became the purchaser for the amount of the tax upon the same, and so became the absolute and *bona fide* owner thereof.

It appears from the evidence reported in the case that Joseph M. Gerrish, up to the time of the transfer of the shares to the defendant, held the same in trust for the plaintiff, who procured the transfer.

The facts disclosed at the trial, as the case finds, up to the time of the alleged sale of the shares, are substantially the same as those referred to in the defendant's brief statement. It appears, in addition, that the number of shares transferred to the defendant was fifty-nine, which embraced those in question. On what conditions, or at what time, these shares were to be assigned to the plaintiff, further than that they were to be held by the defendant as collateral security for his acceptance, does not appear in the report. But it is manifest, from the fact that the defendant, long after his alleged purchase of the shares, instituted a suit against the plaintiff, for the recovery of the money advanced to take up his acceptance, and the taking judgment in that suit, in 1848, and receiving the full amount of that judgment and interest thereon, on July 22, of that year, the causing of the sale of the shares to be made as the property of the plaintiff, and other acts, did not claim a forfeiture of the shares, and that none in fact took place.

We will now examine the proceedings of the corporation of the Machias Water Power and Mill Company and of the defendant, in relation to the sale of the shares by which alone the defendant claims to have derived a title thereto, with a view to ascertain whether such title has vested in him.

At a meeting of the corporation, on March 23, 1844, among other things, on motion of Daniel Harwood, it was voted, that the sum of ten dollars be levied and assessed on each and every share of the capital stock of the company. On motion of William B. Smith, it was voted, that Daniel Harwood, a Director and Treasurer of the company be, and he is hereby appointed agent, to collect the assessments ordered this day, and he is hereby empowered to enforce the collection of the same, according to law. On motion of Wm. B. Smith, it was voted, that, in default of payment of the assessments ordered this day, the sale of the shares shall be made in Boston, after notice being published as required by the Act of the Legislature of this State, approved Feb. 24, 1844.

It appears that a tax was assessed upon the shares of the corporation in pursuance of the votes before mentioned, and, in consequence of the neglect or refusal of certain stockholders to pay the assessments, after being called upon for that purpose, the defendant caused public notice to be given of the time and place of the sale of the shares, on which the tax, so assessed, had not been paid. And it appears that the tax assessed upon the shares of the plaintiff, in the hands of the defendant as collateral security, as before stated, was not paid, and the same were sold at public auction, on March 19, 1845, in the city of Boston, by Stephen Brown, a licensed auctioneer, "by order of Daniel Harwood, Agent Machias Water Power and Mill Company, and that fifty-nine shares standing in the name of Daniel Harwood, held as collateral from William Freeman, were sold to said Harwood for the amount of the assessment thereon."

It appears from the report that the full amount of the original subscription of $100 on each share had been fully paid, on the shares in question, by the plaintiff.

Was the purchase relied upon by the defendant valid in law? The legal title of the shares was in the defendant at the time of the alleged sale; and he treated that title as defeasible, by the payment of the same, which he had advanced for the plaintiff's benefit. There being no forfeiture of the shares at that time, the defendant held them as he had done before.

If, at a legal sale, the shares had produced more than the assessment thereon, and the sum so advanced with interest, with, perhaps, compensation for any trouble which the plaintiff's delinquency had occasioned to the defendant, the latter would have held the excess as the trustee of the plaintiff. For any value of the stock, beyond this, before the sale, he was also in the condition of a trustee for the plaintiff, and it was his duty, holding that relation, if he had chosen not to pay the assessment without a sale, to obtain as high a price for the shares as he could do. His interest as a purchaser would lead him to obtain the property at a small

Freeman *v.* Harwood.

price compared with its value. Therefore, the two interests are treated by the law so incompatible with each other, that they cannot at the same time exist in the same person in relation to the goods to be disposed of by sale. The cases of *Pratt* v. *Thornton*, 28 Maine, 355, and of *Parker* v. *Vose*, 47 Maine, are cited as containing the law on this question. The alleged sale was invalid.

That the shares have been disposed of by the defendant, so that they were not delivered to the plaintiff on a demand made in his behalf, before the institution of this suit, no question is made; and this amounts to a conversion.

It appears from this report, that the defendant has received dividends on the shares in question, which should be accounted for.

According to the agreement of the parties, the defendant is to be defaulted; and, in the opinion of the Court, the value of the shares becomes material; and, in pursuance of the further agreement of the parties, Nathan Longfellow, Esquire, of Machias, is appointed by the Court to report such value as he finds, his estimation to be final. The damages to be recovered are the value of the shares at the time of the conversion, which was when the defendant purchased them at the auction sale, in Boston, after deducting the amount paid by him on account of the assessment thereon, and the sale, and interest on the remainder from the time of sale to the time of judgment; to which should be added the dividends received by the defendant on said shares, with interest thereon, from the time of the receipt to the time of the judgment.

APPLETON, CUTTING, GOODENOW and KENT, JJ., concurred.