# A. N. SMITH ET ALS., RESPONDENTS, *v.* NORTH AMERICAN MINING COMPANY, APPELLANT.

A commission to take a deposition, authenticated by the certificate of the Clerk, under the seal of the Court and issued in pursuance of a former order of the Court, is sufficient authority for taking the testimony of a witness.

Testimony as to mining customs may be introduced under our statute, however recent the date or short the duration of their establishment.

If it be once established or admitted that one of a company of miners was the real discoverer and entitled to a discoverer's share in the location, then such discoverer could thereafter only be shown to have divested himself of that interest by clear and positive evidence.

The evidence of one witness, that the party agreed the discoverer's claim should be divided among all the shareholders in the company, when contradicted by another witness who says he positively refused to assent to such a proposition, is not sufficient.

When a corporation has issued stock to the full number of shares which, by its charter or Act of incorporation it is authorized to issue, no Court can rightfully direct the issuance of other shares of stock unless some of the shares issued were void.

When a Court errs in rejecting testimony, but after further proof and explanation admits the testimony, the former error becomes immaterial and is no ground for reversing the judgment.

Where all the owners in a mining company transfer their entire interest to trustees to hold the mining ground in trust for the corporation, and to issue stock to the amount of a certain number of shares in lieu of the ground conveyed to them, and said trustees do issue the full number of shares of stock which they are authorized to issue, none of the stock issued is void, although one stock holder may receive more and another less than his just share. The mistake may be corrected by a Court of equity by a proper decree, but not so as to make stock void in the hands of an innocent purchaser, nor by ordering the issuance of more stock than the company, by its organization, is entitled to issue.

APPEAL from the District Court of the First Judicial District, State of Nevada, Storey County, Hon. RICHARD RISING presiding.

*Hillyer & Whitman,* for Appellant, made the following points :

*First*—The Court below erred in ruling out the evidence offered by appellant of the books of the company showing the positions of the respective plaintiffs therein, and all matters tending to show a knowledge of and compliance in by such plaintiffs, of the action of the company in dividing the so called discovery claim.

*Second*—The Court erred in admitting the deposition of C. Gottschall, as the commission upon which the same was taken was not issued in accordance with law, in this : that it was issued from the Clerk and not from the Court. (Statutes of Nevada, 1861, p. 380, sec. 380.)

*Third*—The Court erred in admitting the testimony of P. W. Coppers, as to the custom attempted to be proved by him.

*Fourth*—That the preponderance of evidence was in favor of appellant, and the decision should have been for it.

*Fifth*—That the Court should have admitted evidence to show that the appellant was not able to issue the stock demanded, for that all its stock had been issued. That the Court could not extend to respondents the relief by them demanded, until they had affirmatively shown that it was in the power of appellant to issue the stock demanded. (3 Kern. 599; 3 Seld. 274; 10 How. Pr. 543.)

*Sixth*—The Court had no jurisdiction over the cause, as it was not a matter of equitable cognizance. The remedy of the respondents was either by mandamus or in assumpsit. (*People* v. *Crockett*, 9 Cal. 114; *Helm* v. *Suggest*, 12 Ind. 194.)

*Seventh*—The claim of respondents was stale and inequitable.

*Taylor & Campbell*, for Respondents, made the following points:

The deposition of Gottschall was properly admitted, because the *dedimus* issued by the Clerk was in pursuance of an order made in Court and complied with the statutory requirements.

The evidence of mining customs was properly admitted under a statutory provision. (See Laws of 1862, p. 13, sec. 3.)

The motion for nonsuit was properly overruled. The proof shows Gotschall discovered the claim. The answer admits those who joined in the conveyance were entitled to one share of stock for each foot occupied.

If plaintiffs were entitled to stock for discoverer's claim, it follows the Court may order it issued to them. It is no defect in plaintiffs' case that they have not shown defendant had stock to issue. *Prima facie* they must be presumed to have the proper quantity of stock for each claimant.

The answer of defendant does not deny their ability to respond to the relief prayed for; but if it did they could not make such defense available. Certificates of stock issued to those not entitled are spurious and void. (*Mechanics' Bank* v. *New York and New Haven R. R. Co.*, 13 N. Y., 3 Kern. 611 to 620.)

The decree is right. If the company has issued stock to the wrong person it is their business, not that of the plaintiffs, to

look it up and cancel or recall it. (*New York and New Haven R. R. Co.* v. *Schuyler et al.,* 7 Abbott's Pr. R. 601; 17 N. Y. (3 Smith), 592.)

A difficulty in tracing the spurious stock is no reason for withholding justice in this case. (13 N. Y. 618.)

The books of the company, which were rejected when offered in evidence by appellant, were afterwards admitted on their behalf. No injury resulted from the first exclusion.

The case is peculiarly an equitable one, and within the jurisdiction of a Court of Chancery.

Opinion by BEATTY, J., full Bench concurring.

The facts of this case are as follows: The plaintiffs, Smith and Gottschall, with eleven others, took up a mining claim in 1859. The notice of location contained thirteen names, but claimed fourteen shares of three hundred feet each. One extra share was claimed as a discoverer's right. Subsequently these locators and their successors in interest were incorporated under the name of the North American Mining Company. It was provided one share of stock should be issued for each foot of ground located; or in other words, four thousand two hundred shares of stock were to be issued to the stockholders, each receiving in proportion to the ground he held. The mining ground was all conveyed to the corporation or its trustees and stock issued to claimants. The plaintiffs claim they are entitled to a larger share of stock than they have received. They aver that Gottschall was the discoverer of the ledge, and in right of discovery was entitled to the extra share of three hundred feet. That Smith, by virtue of an agreement between them, was interested to the extent of one-half in the same.

The answer denies that Gottschall was the discoverer or entitled to the three hundred feet by reason of being the discoverer, and avers that he and Smith had each received the full share of stock to which they were entitled. On the trial it was attempted to be shown by the defendant that Gottschall was not the discoverer, and if he was, that he waived his right as such in favor of the company, and that the discoverer's share was equally divided out among the thirteen locators.

The Court below find in effect that Gottschall was the first discoverer. That he had not waived his right, and was not estopped from asserting it. That the discovery claim had been improperly divided among the different stockholders, giving Smith and Gottschall each one-thirteenth, when they were each entitled to one-half of the discovery claim, and decreeing that the company should issue to them a sufficient number of shares to make, with what they had already received, the entire three hundred feet, less a few feet which had been used for the common benefit of the corporation. The defendant appeals from this judgment, and raises various points of error. That the commission under which a deposition was taken and read, was insufficient; that a motion for non-suit was improperly overruled; that testimony as to a mining custom was improperly received; that the Court erred in various rulings as to admission and exclusion of testimony, etc.; and finally, that the findings were against the weight of testimony.

The commission was issued in accordance with a previous order of the Court. It was attested by the certificate of the Clerk and under the seal of the Court. We think it is in compliance with the statute.

The motion for non-suit was properly overruled. The testimony as to a mining custom was properly admitted. Such customs under our statute may be proved, however recent the date or short the duration of their establishment. The common law doctrine as to customs does not govern in such cases. The rulings of the Court as to the admission and rejection of testimony were, we think, right, with perhaps one exception, which we will hereafter notice.

As to the point made that the findings are against the weight of testimony, we can only say that the evidence that Gottschall was the discoverer of the mine is not as satisfactory as could be wished. We would suppose that clear and indisputable evidence might be brought as to a fact of this kind. Nevertheless there is sufficient evidence to justify the finding that he was the discoverer. If it once be admitted that he discovered the claim, and was by right of discovery entitled to the fourteenth share of three hundred feet, then he could

only lose that right by some clear and positive evidence of having divested himself thereof.

The only evidence offered to this effect is, that at a meeting of the proprietors about the time of the incorporation, the question was raised as to what was to be done with the discoverer's share. One witness says Gottschall agreed to let it be divided among the entire company; another says he objected to such division and claimed it for himself and Smith. There are some other slight circumstances tending to show he might have known that the company claimed this fourteenth share as the common property of the company. We think such evidence does not show that Gottschall ever divested himself of his claim to the three hundred feet, or that he is in any manner estopped from claiming them. We are satisfied with the finding of the Court below.

During the progress of the trial the defendant offered to prove that the entire four thousand two hundred shares of stock had been issued, and consequently no new stock could be issued to plaintiffs without extending the limit of shares fixed by the constitution of the company. This evidence was rejected by the Court. This ruling and the form of the decree present the real difficulties of the case. We are satisfied that when a corporation has issued certificates of stock (which are valid and not void) to the full extent of all the shares, which, by law and the constitution of the company, it may issue, no Court can order the issuance of other shares, because in that respect the powers of the corporation have been exhausted. (See *Mechanics' Bank* v. *New York and New Haven R. R. Co.*, 3 Kernan's Reports, 599.)

The first question, then, to be determined is, were the certificates issued to the locators other than Smith and Gottschall for their supposed proportion of the discoverer's share absolutely void, or were they valid certificates issued to the wrong parties.

If void, then the ruling and decree are right, and the judgment must be affirmed. If, however, these certificates are not void, then the plaintiffs are entitled to a different remedy. They must be entitled to a pecuniary compensation from the company, or else to a remedy against the other locators who received more stock than they were entitled to.

Again, what is the extent of the remedy to which they are entitled? If they receive stock from other locators, must they not refund any assessments paid by those to whom the stock was issued? If they receive pecuniary compensation from the corporation, are they to receive the full value of the stock, or its value less the amount of assessments paid or payable on the same? These are most important questions, not merely in this case but to all mining corporations. Doubts must frequently arise as to how many shares particular individuals are entitled in mining corporations; mistakes must frequently be made in issuing shares. It is highly important to have some fixed rule as to how these mistakes are to be corrected. Who are to be made parties to a bill for that purpose? What is to be the nature of the relief afforded? Before determining this case we wish to hear argument on the points suggested. We are not only willing to hear argument from the counsel in this case, but also from the counsel of other mining companies who are interested in the question.

We shall order the case on the October calendar for further argument on the points suggested.

Opinion after re-argument by BEATTY, J., full Bench concurring.

When we wrote our former opinion in this case we left certain propositions undecided, and ordered the case on the calendar for argument upon the points suggested. By leave of the Court the counsel for appellant filed a brief on one point not left open by the order of the Court, resubmitting the case. That point was as to the alleged error of the Court below in rejecting the company books when offered in evidence by the appellant. As we understand the record, it shows that when the books were first offered, the Court ruled they were not admissible, on account of certain alterations and erasures contained in them. Afterwards when those erasures were explained, the books were admitted. Even admitting the Court erred in rejecting the books in the first place, the subsequent admission of them cured the error, and this was no ground for reversing the judgment. It was for the reason that these books were

subsequently admitted that we failed to notice this point in our original decision.

This brings us back to the question propounded in our original opinion : " Were the certificates issued to the locators other than Smith and Gottschall for their supposed proportion of the discoverer's share absolutely void, or were they valid certificates issued to the wrong parties ? "

The briefs which have been filed, however able and ingenious in argument, have failed to furnish any authorities bearing on this point.

After mature reflection we are inclined to think and so hold that certificates issued under the circumstances of this case are not void, but valid certificates. That when certificates for four thousand two hundred shares of stock had been issued to those who signed the trust deed, the powers of the trustees in this regard were exhausted.

That no more shares could be issued, and those issued should be held to represent the valid stock of the company, and should be good in the hands of any party receiving them by regular assignment and transfer on the books of the company. Here are, say, thirteen persons who unite in a deed of all their interest in a mining claim, which may be treated as a piece of real estate, embracing a certain number of feet' or acres of land. The trustees are to hold this for corporate purposes, and issue stock or certificates of stock to each of the grantors in proportion to their respective interests in the real estate. It is the interest of all the members of the corporation that the certificates thus issued by the trustees of their own choice should be negotiable in the market. At least, if they do not acquire all the qualities of negotiable paper, that the public may rely with certainty on the proposition that certificates of stock issued by the trustees of a corporation to those who unite in the trust deed, and not exceeding in number of shares issued the limit fixed by the act of incoporation, should ever afterwards be held as valid evidence that the *bona fide* holders thereof are stockholders to the extent shown by the certificates. Any other rule would be highly prejudicial to the general interests of mining corporations.

The original stockholders in such associations almost uni-

versally wish to sell portions of their stock to pay assessments and develop claims. If those who deal in stocks are required to go back of the action of the trustees in distributing their certificates of stock, and ascertain that they have made no mistake as to the number of shares issued to each stockholder, it would greatly interfere with the transfer of stocks and the safety of those who deal in them. It would also operate very injuriously, as we have before stated, on the original shareholders, by making their certificates less negotiable. Indeed, we cannot see well how we could go behind the distribution of the trustees in regard to stock scattered among a number of the assignees of the original stockholders.

Suppose A, B and C form a corporation to contain three hundred shares, and convey their mining claim to a trustee or trustees, who are to hold the realty for corporation purposes, and issue certificates of stock to those who sign the trust deed. The trustee issues to A ten certificates of stock for ten shares each; they are issued at the same time, but numbered one to ten. A goes into the market and sells these different certificates, the first certificate he sells is No. 10, the last, perhaps, is No. 1.

After he has sold all his stock it is discovered that he was entitled to only ninety shares of stock, while he got certificates for one hundred; on the other hand, C was entitled to one hundred and ten and only got one hundred. Will the Court direct one of A's certificates to be canceled and one of the same kind issued to C? If so, which one will be canceled? All are in the hands of innocent purchasers. If it is proposed to cancel No. 10, as the last one issued and the one which was in excess of A's just proportion, the holder might well say, although highest in number it was issued simultaneously with all his other certificates, and as A was undoubtedly entitled to ninety shares when he sold ten to me, my certificate should be held good.

If you propose to cancel certificate No. 1, the holder might well say, when this was issued, A was entitled to ninety shares. This was probably the very first certificate issued. Its number indicates that it was first signed and made out, though delivered simultaneously with nine other certificates. It being

the first certificate in order, and knowing that A was entitled to some stock, I had a right to buy it without inquiring what other stock A may have sold.

To determine in such cases which stock should be canceled in the hands of an innocent holder would sometimes be impossible. The safest and most convenient rule, we think, is not to go behind the distribution made by the trustees when the stock has passed into the hands of innocent holders.

In other words, we hold that all stock issued by trustees, under the circumstances of this case, must be held as valid stock. If the full number of shares was issued before the filing of their bill, the Court cannot order the issuance of additional stock, and, therefore, erred in refusing to permit appellant to prove all the stock of the company was issued and in the hands of the stockholders. For this reason the case must be reversed and a new trial granted.

The Court below will allow either party desiring it to amend their pleadings, and bring other parties before the Court. With proper parties before the Court it would doubtless be competent for that tribunal to order those who originally obtained more shares than they were entitled to (if they still hold them) to assign the surplus shares to plaintiffs upon plaintiffs paying the amount of any assessments with legal interest, which the holders have paid.

Of course, if the holders of those shares have received dividends they must account for them. Where the parties who have received the excess of shares are no longer stockholders to a sufficient extent to replace the stock improperly received, the company must make good to plaintiffs the value of the stock not replaced or purchase other stock to replace it. The criterion of damages will be the value of the stock when the decree is made. The plaintiffs will also be entitled to any dividends made on this stock, and will be chargeable with any assessments paid. This is a mistake of the trustees who were the mutual agents of all parties. For this reason the criterion of damages is different from the case where a party is deprived of his stock by a wrong-doer.

If the company is compelled to pay for any portion of the

stock, it will be entitled to indemnity from the parties who received and sold the excess of stock.

As new parties will probably be before the Court on the next trial of this case, who may wish to introduce other and new evidence about the discovery of the claim, the Court below will try the whole case *de novo*.