Keller v. The Eureka Brick Machine Mfg. Co.

HENRY KELLER, Respondent, v. THE EUREKA BRICK MACHINE MANUFACTURING COMPANY, Appellant.

St. Louis Court of Appeals, December 23, 1890.

1. **Loss of Certificate of Stock :** RIGHT OF STOCKHOLDER TO NEW CERTIFICATE. An action in equity will not lie by a stockholder, who has lost his certificate of stock, to compel the corporation, on the execution of bond of indemnity, to issue to him another original certificate in lieu of that which has been lost.

2. **Corporation :** REMEDIES OF TRANSFEREE OF STOCK. *Held, arguendo,* that the transferee of a certificate of stock may, if the corporation wrongfully refuses to permit a transfer of the stock to be made to him on its books, either sue the corporation for damages for the conversion of the stock, or by a suit in equity compel the corporation to permit such transfer to be made to him ; but no opinion is expressed as to which transferee of stock is entitled to have the stock transferred to him on the books of the corporation, when there are *bona fide* transferees for value of two different certificates issued by the corporation for the same stock.

*Per Biggs, J., dissenting :*

3. **Loss of Certificate of Stock :** RIGHT OF STOCKHOLDER TO NEW CERTIFICATE. Whenever a certificate of stock is satisfactorily shown to have been lost or destroyed, the corporation, upon being reasonably indemnified by bond, may issue, or be compelled to issue, another original certificate to the stockholder. But, in so doing, it asserts that the holder of the new certificate is the holder of the stock, and incurs the risk of having to account in damages to any *bona fide* purchaser for value of the first certificate.

4. —— : —— : DUTIES OF CORPORATE OFFICERS. The officers of a corporation will in all such cases be justified in refusing to act until the owner of the lost certificate has, at his own expense, established the fact of such loss, and his right to another certificate, by the decree of a court of competent jurisdiction.

*Appeal from the St. Louis City Circuit Court.* —HON. DANIEL D. FISHER, Judge.

REVERSED AND REMANDED (*with directions*).

*Sale & Sale*, for appellant.

Any agreement on the part of defendant to issue to plaintiff an original certificate would be *ultra vires. First*. Because it is the common-law duty of a corporation to refuse to transfer stock until the original certificate is surrendered. Morawetz on Corp., sec. 186, p. 184; *Smith v. Mining Co.*, 1 Nev. 428. *Second*. Because the by-law of the company printed on the face of its certificate forbids a transfer without surrender of the original certificate. See Taylor on Law of Private Cor. [1 Ed.] sec. 594, p. 446; Cook on Stockholders, sec. 358; *Railroad v. Schuyler*, 34 N. Y. 30, p. 81; *Railroad v. Robbins*, 35 Ohio St. 483; *State ex rel. v. Railroad*, 30 La. Ann. 308; Lowell on Transfer of Stock, secs. 119–128.

*Laughlin, Kern & Tansey*, for respondent.

THOMPSON, J.—This was an action in the nature of a suit in equity to compel the defendant to issue to the plaintiff other certificates of stock in the place of his original certificates, alleged to have been *lost*, without the word, "duplicate," or any other words being written upon them to indicate that they were issued in place of other certificates, which are still outstanding. Such proceedings were had in the circuit court that the court ordered the defendant to issue such new certificate to the plaintiff without any such words being upon it, the plaintiff having given to the defendant a bond of indemnity in the sum of $20,000, containing the following clause: "In consideration of said Eureka Brick Machine Manufacturing Company issuing to said H. H. Keller duplicate shares of stock in said company in the place of said shares lost (the parties bind themselves) to hold themselves responsible to said company for any loss they may be liable for in the issuing or by reason of having to issue said duplicate shares of stock to said

Keller." This bond was signed by George C. Hull, the cashier of the bank to which the certificates were delivered by the plaintiff, and also by James Hull, the brother to whom he claims to have delivered them for safe keeping,—a circumstance which tends to show their good faith in the matter and their willingness to assist the plaintiff in repairing, as far as possible, the damage accruing to him from the unfortunate accident.

The certificates, alleged to have been lost, were certificates for one hundred shares of stock, in the aggregate, in the defendant company, of the nominal value of $100 per share. The plaintiff was one of the original members of the corporation, and its first president. The certificates were issued to him directly by the company, and in his name. He delivered them to the National Bank of St. Joseph as collateral security for the faithful performance by him of an obligation. He testifies that, when so delivered, they were not indorsed in blank; but Mr. Hull, the cashier of the bank, testifies that they were so indorsed, not from positive recollection, but from the fact that it was his habit not to receive stock as collateral security which was not so indorsed. The transaction took place after banking hours, and the cashier states that he delivered the certificates to his brother for safe keeping. Some two months afterwards, such events having supervened that the plaintiff became entitled to have them redelivered to him, a search was made for them, and they could not be found. James Hull, the brother of the cashier, who was collector of state and county revenue at St. Joseph, denies that the certificates were ever delivered to him, and testifies that he never saw them, but does not deny that an envelope containing them may have been left at his office.

It further appears that, upon the plaintiff tendering to the defendant the bond of indemnity, with the condition above quoted, the latter tendered to him a new certificate, containing the word, "duplicate," and also the

following words :   " These certificates, issued in lieu of numbers 45, 46, 47 and 48, claimed to have been lost and unindorsed ; " and also, in another place, the words, " Duplicate original claimed to have been lost." The evidence also shows that the plaintiff could have sold the shares, if he could have produced a certificate which did not contain the words showing that it had been issued in lieu of another, claimed to have been lost.

It is thus perceived that the question which arises on this record is, whether, upon tendering sufficient indemnity, a stockholder, who has lost or mislaid his certificate, is entitled to the aid of a court of equity to compel the corporation to issue to him other certificates, which on their face purport to be originals, and which contain no notice that they are issued in lieu of those claimed to have been lost, in the absence of any statute, by-law or other express legal or conventional obligation so to do.

We lay out of view the case, where the original certificate is shown by satisfactory evidence to have been *destroyed*, for that is not the case before us, and we do not wish to be understood as intimating any opinion as to what a court of equity ought to do under such circumstances.   We also wish to be understood as not denying the jurisdiction of a court of equity to grant appropriate relief, on indemnity being given, to the owner of a written obligation shown to have been lost or destroyed.   The existence of such a jurisdiction has been affirmed in *Savannah National Bank v. Haskins*, 101 Mass. 370 ; *Galveston City Co. v. Sibley*, 56 Tex. 269, and in other cases.   The question before us is as to the extent to which such a court will grant relief in the case of a loss of an instrument of the peculiar nature of a stock certificate.

What, then, is a stock certificate ?   It is a solemn and continuing affirmation by the corporation that the person, to whom it was issued, is entitled to all the rights and subject to all the liabilities of a stockholder

in the company in respect of the number of shares
named, and that the company will respect his rights,
and the rights of anyone to whom he may transfer such
shares, by refusing to admit any new transferee to the
rights of a shareholder except upon surrendering of the
certificate.    While it is not in a strict sense a negotiable
instrument, yet it partakes to a great extent of the
qualities of a negotiable security.   Upon being indorsed
by the original holder therein named, by signing a
blank power of attorney, authorizing the person therein
named to cause it to be transferred on the books of the
corporation, it passes from hand to hand by delivery,
very much as does a negotiable bond.   When it falls
into the hands of one, who buys not for speculation but
for investment, and who wishes to be admitted to the
rights of a stockholder, he inserts a name in the blank
power of attorney, and the person so empowered
demands of the corporation the right to transfer it on
the books of the company to the present holder.   If
this demand is refused, the holder has two remedies:
*First.*   An action against the corporation for damages
for the conversion of his shares.   *McAllister v. Kuhn*,
96 U. S. 87 (affirming s. c., 1 Utah, 275); *Bank v.
Lanier*, 11 Wall. (U. S.) 369; *Holbrook v. Zinc Co.*, 57
N. Y. 616; *Payne v. Elliott*, 54 Cal. 339; s. c., 35 Am.
Rep. 80; *Ayres v. French*, 41 Conn. 142; *Boylan v.
Huguet*, 8 Nev. 345; *Bond v. Iron Co.*, 99 Mass. 505;
*Freeman v. Harwood*, 49 Me. 195; *Baltimore, etc., Ry.
Co. v. Sewell*, 35 Md. 238; s. c., 6 Am. Rep. 402; *Pratt
v. Railroad*, 126 Mass. 443.   *Second.*   A suit in equity
to compel the corporation to issue a new certificate to
him and to admit him to the rights of a shareholder.
*Cushman v. Mfg. Co.*, 76 N. Y. 365; s. c., 32 Am. Rep.
315; *Iron Ry. Co. v. Fink*, 41 Ohio St. 321; *Chew v.
Bank*, 14 Md. 299; *St. Romes v. Press Co.*, 127 U. S.
614; *Tel. Co. v. Davenport*, 97 U. S. 369.

Both of these remedies necessarily proceed on the
ground, that the holder of the certificate is entitled to

be admitted by the corporation to the rights of a shareholder, and that the corporation denies this right. The second remedy also proceeds upon the well-known principle that, in the eye of a court of equity, a corporation is a trustee for its shareholders for the purpose of protecting their rights as such.

Let us next inquire, with special reference to the facts of this case, what is the liability of the corporation where it issues a certificate of stock, which by its terms is transferable only on the books of the company, and then, on the representation of the person to whom it was originally issued that it has been lost or destroyed, issues to him another certificate, and he negotiates the latter to an innocent taker. It incurs the risk of a double liability in respect of the same shares. There are two adjudications on this point. In *Greenleaf v. Ludington*, 15 Wis. 558, the holder of a stock certificate assigned it, and then presented to the company an affidavit that he had lost it, and gave bond of indemnity and procured from the company a new negotiable one. Thereafter the holder of the original certificate demanded of the company a transfer of the title on its books to him, which the company refused. It was held that he could maintain an action against the company for damages. So, in *Cleveland, etc., Ry. Co. v. Robbins*, 35 Ohio St. 483, certain shares were transferred by the person named in the certificate to a *bona fide* purchaser in the usual way of signing the blank power of attorney indorsed on the certificate. Afterwards the company issued to a third party new certificates on the supposition, that the originals had been lost by the original holder. It was held that it must make good the damages to the *bona fide* transferee.

These cases, in what they hold, are consistent with the theory advanced by the court of appeals of New York in the celebrated Schuyler fraud cases, and no doubt held by other courts, that, in the case of an

Keller v. The Eureka Brick Machine Mfg. Co.

attempted *double* transfer of the same shares, the *bona fide* taker, to whom they are first transferred on the books of the company in the regular way, gets the title and is the shareholder. In the second of these cases it was said by DAVIS, J.: "Where the stock of a corporation is by the terms of its charter or by-laws transferable only on its books, the purchaser, who receives a certificate with power of attorney, gets the entire title, legal and equitable, as between himself and his seller, with all the rights the latter possessed ; but, as between himself and the corporation, he acquires only an equitable title, which they are bound to recognize and permit to be ripened into a legal title, when he presents himself, before any effective transfer on the books has been made, to do the acts required by the charter or by-laws in order to make a transfer. Until those acts be done, he is not a stockholder, and has no claim to act as such ; but possesses, as between himself and the corporation, by virtue of the certificate and power, the right to make himself, or whomsoever he chooses, a stockholder by the prescribed transfer. The stock not having passed by the delivery of the certificate and power of attorney, the legal title remains in the seller, so far as affects the company and subsequent *bona fide* purchasers who take by transfer duly made on the books. And hence a buyer, in good faith, of the person in whose name the stock stands on the books, who takes a transfer in conformity to the charter or by-laws, permitted to be made by the authorized officer of the corporation, becomes vested with a complete title to the stock, and cuts off all the rights and equities of the holder of the certificate to the *stock itself*. What other rights and equities he may possess, is another question ; but if the transferee has taken in good faith and for value, the stock is gone beyond his reach and beyond recall by the corporation. The non-production and surrender of the certificate at the time of the transfer is not fatal to the title of the transferee. It is only essential to

the safety of the corporation, and may be waived by it at its own peril. The company has the means of knowing whether a certificate of particular stock is outstanding or not, and *the power to compel its return and cancellation*, before any transfer is made; and a buyer, where the transfer is permitted by the corporation to be made on its books by one to whose credit the stock is standing, has a right to presume that no certificate has issued, or, if one has, that his vendor has duly surrendered it for cancellation."

This reasoning contains the further suggestion, that to compel a corporation to issue a second original certificate in the place of one alleged to have been lost might put it in the hands of third persons to prejudice the rights of the public by imposing upon them as purchasers one or the other of these certificates. Both cannot be good. The certificate is only the *symbol*, it is not the *stock*. There may be two certificates in respect of the same shares, but there cannot be two sets of the same shares held in full ownership by two different persons, or by one person. If one certificate is good so as to confer the rights of a shareholder upon its owner, the other is void, except as giving an action for damages against the corporation. This is obvious when it is considered that the shares of the corporation can only be increased in the manner pointed out by its charter or governing statute, and not by the misprisions of its ministerial officers. Upon this ground it has been held that, if all the shares which the company is empowered to issue have been issued, and if other shares are thereafter issued, such excessive issue of shares is void, and does not even make their holders liable to creditors of the company. *Scovill v. Thayer*, 105 U. S. 143, 148, and cases cited. If then a corporation can be compelled, on proof satisfactory to a court of equity and a bond of indemnity being given, to issue other original certificates in place of certificates claimed to have been lost, it may place in the hands of third

parties the means of defrauding the public by convey-
ing to them certificates of shares which do not give to
them the rights of shareholders, but which only give to
them the right to maintain a lawsuit against the com-
pany.

It is not necessary, for the purpose of this decision,
for us to express an opinion, as to which of the certifi-
cate-holders, in such a case, would be entitled to
the rights of stockholders as against the company.
That question could only properly arise for determina-
tion in the contingency named, and we ought not to
express an opinion upon it in this case, especially as no
parties directly interested in determining it are before
the court. It is sufficient for the purposes of this case
for us to say that there are opposing theories on the
subject. The New York doctrine, as shown by the
language above quoted, is that the one whose transfer
is first regularly made on the books of the corporation
is the real stockholder. But, on the other hand, the
supreme court of Illinois has held in *Hall v. Road Co.*,
70 Ill. 673, that, if the secretary of a corporation issues
new certificates of stock to one claiming to have pur-
chased existing shares therein, without taking up and
canceling the original, the new certificates will be
*invalid*. Under this theory it is possible ( though we
do not so decide ) that, if relief were granted in this
case, as demanded by the plaintiff, a *bona fide* purchaser
of the new certificates would get no rights as a share-
holder, but only an action for damages against the
corporation. Assuming that such a result is *possible*,
it follows that any person to whom a certificate of cor-
porate stock is offered for sale, which has been issued in
lieu of another certificate still outstanding, has a right
to know that fact. Upon what principle, then, shall a
court of equity oblige a corporation to issue, in such a
case as this, a new certificate concealing that fact? The
concealment of such a fact by the holder from a pur-
chaser might be such a fraudulent concealment as

would avoid the sale. Can a court of equity make itself a party to such a fraudulent concealment?

It may be conceded, for the purposes of this case, that, where certificates of stock pass out of the hands of the original owner by theft, fraud, or even by accident, without negligence, a *bona fide* transferee, into whose hands they may subsequently come, will get no title which he can assert against the true owner, and none which he can oblige the corporation to recognize. *Biddle v. Bayard*, 13 Pa. St. 150 ; *Sherwood v. Meadow Valley, etc., Co.*, 50 Cal. 412. But, where he signs a blank indorsement of transfer, with an irrevocable power of attorney on the back of the certificate, and delivers it so signed to a third person, he not only voluntarily puts such third person in possession of the usual symbol of his property, but he also confers on him evidence of title, so that he may pass a good title to others, as against the original owner, to an innocent purchaser, although he has, in making the transfer to the innocent purchaser, proceeded in fraud of the original owner and exceeded the authority actually conferred. *McNeil v. Bank*, 46 N. Y. 325 ; s. c., 7 Am. Rep. 341; *Merchants' Bank v. Livingston,* 74 N. Y. 223 ; *Mt. Holly, etc., Co. v. Ferree*, 17 N. J. Eq. 117 ; *Walker v. Railroad*, 47 Mich. 338. Assuming the soundness of these decisions, it follows that in this case the plaintiff, having voluntarily delivered the certificates to the bank cashier, indorsed in blank as the cashier thinks, if the latter should transfer them to a third person for safe keeping, and that third person should wrongfully transfer them to an innocent taker, the plaintiff could not assert a title to them as against such innocent taker. If he could not assert a title to them as against an innocent purchaser, it would be on the ground, that he had *parted with his title* to the latter ; and, if he had parted with his title to the latter, it is not easy to see how he could *subsequently* transfer a good title to another by means of a new certificate issued by the corporation.

But as against the corporation the rights of the second purchaser, he being an innocent purchaser, would be at least such that he could maintain an action against the corporation for damages for refusing to transfer the shares to him on its books,—and this wholly without reference to the rights of the preceding purchaser as against the corporation. This was ruled by the supreme court of the United States in *Bank v. Lanier*, 11 Wall. 369, 377, where certain *bona fide* purchasers of national bank shares sued the bank for damages for refusing to transfer the shares to them on their books. Mr. Justice DAVIS, in giving the opinion of the court, said : " The power to transfer their stock is one of the most valuable franchises conferred by congress upon banking associations. Without this power it can readily be seen the value of the stock would be greatly lessened ; and, obviously, whatever contributes to make the shares of stock a safe mode of investment, and easily convertible, tends to enhance their value. It is no less to the interest of the shareholder than the public, that the certificate representing his stock should be in a form to secure public confidence ; for without this he could not negotiate it to any advantage. It is in obedience to this requirement that stock certificates of all kinds have been constructed in a way to invite the confidence of business men, so that they have become the basis of commercial transactions in all the large cities of the country, and are sold in open market the same as other securities. Although neither in form nor character negotiable paper, they approximate to it as nearly as practicable. If we assume that the certificates in question are not different from those in general use by corporations, and the assumption is a safe one, it is easy to see why investments of this character are sought after and relied upon. No better form could be adopted to assure the purchaser that he can buy with safety. He is told, under the seal of the corporation, that the shareholder is entitled to so much stock, which can be transferred on the books of the

corporation in person or by attorney, when the certifi-
cates are surrendered, but not otherwise. This is a
notification to all persons interested to know, that who-
ever in good faith buys the stock, and produces to the
corporation the certificates, regularly assigned with
power to transfer, is entitled to have the stock trans-
ferred to him. And the notification goes further, for it
assures the holder that the corporation will not transfer
the stock to anyone not in possession of the certificates."

Without pursuing this line of inquiry further, we
are clear that the company cannot be involved in the
double liability, which might follow from having two
original certificates for the same shares outstanding,
in the absence of any statute, by-law or conventional
obligation putting such a liability on it, by the mere
fact that one of its shareholders has, through his fault
or misfortune, lost his original certificate, although
suitable indemnity is given. If a second certificate con-
veying no information on its face that it is a duplicate
is issued, and is negotiated to an innocent taker, it may
find itself under a double liability in respect of the same
shares. It may find that it has issued and received pay
for one hundred shares, and that it is liable in respect of
two hundred. By this act it may impair the value of the
shares of every other stockholder in the company.
Besides, if it can be required to do this in favor of one
shareholder who has been so careless or unfortunate as to
lose his certificates, it may be required to do so for all.
In this way it may incur double liabilities, which may
not mature for years, in respect of the same shares,
against which it holds bonds of indemnity which may be
good to-day and worthless to-morrow. Suppose that the
new certificates have been negotiated to innocent takers,
and in the meantime the bond of indemnity has
become worthless ; by what means can the corporation
proceed to get a new and sufficient bond?

These suggestions show the difficulty in the way of
granting the relief claimed by the plaintiff in this case ;

and the same difficulties have presented themselves to other courts. It was felt in a case already cited (*Savannah National Bank v. Haskins*, 101 Mass. 370), where it was held by a majority of the court that a suit in equity could be maintained for relief by one who had by accident lost a negotiable bill of exchange, where the death of the drawer rendered it impossible to procure a new one, provided suitable indemnity should be given. The question arose on a demurrer to the bill, and the court only felt called upon to decide, at that stage of the case, that proper relief could be given "where it is in the power of the court to secure the defendant from all *appreciable* injury."

The same difficulty was felt by the supreme court of Texas, in the case of *Galveston City Co. v. Sibley*, 56 Tex. 269, which was a suit in equity to procure relief analogous to that demanded in the case before us. The court refused to require the company to issue a new certificate in the place of the one alleged to have been lost, but did establish the rights of the plaintiffs as stockholders by its decree, upon their giving a good bond of indemnity, which provided (among other things) "that *this decree*, or a certified copy thereof, is and *shall be held as evidence* of the right, title and interest of the plaintiffs in and to said stock," etc. The court said: "To require that the defendant company, in the present case, should substitute the alleged lost certificate of stock, which was assignable by transfer accompanying it, without being required to be upon the books of the company by a new certificate not defeasible on its face, would be to demand that which the company is not under either a legal or a moral obligation to perform. This, in the event the original certificate was not in fact lost, might force the company to recognize and pay a share of stock not voluntarily issued by them, and which would to that extent lessen the value of those previously issued. And, besides, in the event the number of shares authorized by the charter had already been

issued, then under the guise of judicial authority the company might be compelled to do an unauthorized act and one *ultra vires*."

The same difficulty was felt by the court of appeals of Maryland in *Chesapeake, etc., Canal Co. v. Blair*, 45 Md. 102, where the instrument lost was a *negotiable* coupon bond which had several years to run, and where the court granted relief in the form of a decree requiring the company to issue *non-negotiable* certificates in the place of the lost bond.

The only case which we have been able to find, where the relief prayed for in this case was granted, is the case of *Phillips v. Gaslight Co.*, 25 La. Ann. 413. In this case there was a by-law providing for the issuing of new certificates in place of lost ones. We observe that the court also authorized this to be done without indemnity, taking the view that an assignee of the certificate supposed to be lost (if it should prove not to have been destroyed) would have no rights against the company. This may be the law of *Louisiana*, but it is not the general American law, nor is it our law.

We are, therefore, of opinion that the decree of the circuit court must be reversed. We think that the most that can be required of the defendant is to issue to plaintiff duplicate certificates in lieu of the ones which have been lost. We are also of opinion that, if this is all that is required of the company, a bond of indemnity in the sum of $1,000, signed by two solvent sureties will be sufficient. We direct the circuit court, if the plaintiff shall so move, to enter a decree requiring the defendant, on the plaintiff giving to it such a bond, to issue to him stock certificates in lieu of those which have been lost, bearing the same numbers, but containing the word "Duplicate," written in red ink or conspicuously printed across their face; and also the following words, "Issued in pursuance of the decree of the circuit court of the city of St. Louis, state of

Missouri, in the case of *Henry Keller v. Eureka Brick Machine Co.*, being case numbered 81,263, on the docket of that court, in lieu of other certificates found by the court to have been accidentally lost and not negotiated by said Keller." It is so ordered. Judge ROMBAUER concurs; Judge BIGGS dissents.

BIGGS, J. ( *dissenting* ).—I concur in the reversal of the judgment for the reason only, that the circuit court failed to require the plaintiff to give a bond. This was a condition precedent to plaintiff's right to relief.

According to my view, the treatment of the legal questions in the opinion is unsatisfactory, and utterly fails to meet the exigencies of the case. The conclusion is that Keller is entitled to duplicate certificates, but that it should be stated in them, that they had been issued in pursuance of a decree of the circuit court in this case, wherein it had been ascertained that the originals had been actually lost and not negotiated by Keller. If this decree stood by itself, I would not seriously object. The trouble with me is, that such a decree would be founded on the opinion of this court, which discredits Keller's title to his stock, and necessarily casts doubt upon his ability to convey to another an absolute and indefeasible title. The reading of the opinion would deter any prudent business man from buying from Keller. I think that Keller has not only the right to a finding that his original certificates had been actually lost and not negotiated by him, but the court should also find and decree that he is *now* the *bona fide* owner of the stock.

My associates have misapprehended the record in this case in some respects, and, as a consequence, the opinion fails to state the facts. It is stated, in the opinion, that the circuit court in its decree required a bond from the plaintiff, and that in compliance therewith a bond in the penal sum of $20,000 was tendered. I do not so read the record. It is for the reason that the

court failed to require the bond, that I concur in a reversal. The true facts are that there were two counts in the petition. In the first, the plaintiff asked the court to compel the defendant to issue to him new certificates in lieu of those lost. In the second, the averment was made that the defendant had agreed to issue to the plaintiff the new certificates demanded, provided he would furnish a bond of sufficient indemnity to secure the defendant against any contingent liability by reason of the issuance of the new certificates ; that the plaintiff had delivered such a bond, which was accepted by the defendant, and that afterwards the defendant refused to comply with its part of the agreement. The bond referred to is the only one in the case. The trial court evidently regarded it sufficient to protect the defendant, and for this reason it failed to provide in the decree for an additional bond. In this I think the court committed error. My reasons are : *First*. That such a bond ought to be given in pursuance of the decree ; *second*, that the bond given provided for the issuance of *duplicate* certificates, whereas the decree required *new* certificates. The obligation of the sureties in the bond is *strictissimi juris*, and this variation between the conditions of the bond and the terms of the decree would, in my opinion, render the bond worthless as an indemnity, in so far as the defendant should comply with the judgment of the court.

As a defense, the defendant pleaded one of its by-laws to the effect, that its capital stock could only be transferred on the books of the company upon the surrender of the outstanding certificates representing the stock sought to be transferred ; that the issue of a new certificate to the plaintiff, without the surrender and cancellation of the old certificates, would be *ultra vires*, inasmuch as there were then outstanding certificates for the entire authorized capital of the defendant corporation.

Practically there is no controversy as to the facts. The evidence tended to show that the plaintiff was one of the original incorporators of the defendant company, and that the certificates, which were alleged to have been lost, were issued to him as one of the original stockholders; that, on or about the first day of July, 1889, the plaintiff was about to enter into some kind of a contract with parties in St. Joseph, Missouri, and to secure the faithful performance of his part of the contract, if it should be entered into, he placed the certificates in the hands of one George C. Hull, the cashier of a national bank at St. Joseph; that the contemplated contract was abandoned; that the plaintiff demanded of Hull the return of the certificates, but that they could not be found, although search had been diligently made in all places where they would likely be found. The plaintiff testified positively that the certificates were not indorsed, while Hull said that his impression was that they were indorsed; that his reason for thinking so was that, according to his usual method of transacting such business, an indorsement would have been required. He also testified that the certificates were delivered to him after business hours, and that he placed them for safe keeping in the safe of his brother, who was at that time collector of revenue for Buchanan county. His brother testified that he had no recollection of ever seeing the certificates, but he had made repeated searches for them among his papers. The loss of the certificates was as clearly established as it is possible to do by human testimony; the witnesses by whom this fact was established were in no way discredited; and there is not a fact or circumstance in the case that has the remotest tendency to even create a suspicion of bad faith. As evidence of the good faith of the Hulls, who are prominent and worthy citizens of Buchanan county, they have manifested their readiness to give any kind of bond required. So much for the facts.

Now let us examine the defendant's theory of the main, and only, defense made by it. If the defendant is right in his view as to the effect of the mere transfer of a certificate of stock, I am free to say that the issuance of new certificates to Keller would be *ultra vires* of the corporation, and no court could rightly compel it to do so. *Case v. Kelley*, 133 U. S. 21. This position, if it has any foundation in law at all, must rest on the legal assumption, that the transfer and delivery of a certificate of stock to a *bona fide* purchaser, without more, constitutes such purchaser a stockholder in the corporation. Arguing from this premise, the defendant's counsel insist that, when the corporation issues new certificates without requiring the surrender of the old ones, even though it be done in obedience to an order of court, it amounts to a double issue of stock; that, even though proof of the most convincing character be produced that the originals have been lost, the issuance of duplicates *only* could be lawful, because it could not be said with certainty that the certificates, claimed to have been lost or destroyed, were not outstanding in the hands of a *bona fide stockholder*. While the majority of the court decline to express an opinion on this subject, yet it is stated in the opinion, and the statement is made unconditionally, that, if a corporation refuses to recognize the holder of its certificates as a stockholder, he may either pursue his right of action for damages, or by a suit in equity may compel the corporation to issue a new certificate and admit him to all the rights of a stockholder. This could only be true as to the latter remedy, under the defendant's idea of the law. To illustrate : If the original certificates issued to Keller should be produced by a *bona fide* purchaser either from Keller or Hull, the defendant would be compelled to recognize him as a stockholder, regardless of any action of the courts in reference to the lost certificates, or as to who was the then owner of the new certificates issued under the order of court. I will be able to show

further on in this opinion that the authorities, cited in support of this statement of the law, do not sustain it, when it is made to appear that the new certificates of stock have passed into the hands of *bona fide* purchasers, and there has been a transfer on the stock books of the corporation.

The effect of a mere delivery of a certificate of stock, without more, has been discussed by the text-writers and by some of the courts. *Helm v. Swiggett*, 12 Ind. 194; *New Albany Ry. Co. v. McCormick*, 10 Ind. 499; *Marlborough Mfg. Co. v. Smith*, 2 Conn. 579; *Coleman v. Spencer*, 5 Blackford, 197; *Shaw v. Spencer*, 100 Mass. 382; *Moore v. Bank*, 52 Mo. 377; *Chouteau v. Harris*, 20 Mo. 382; *St. Louis Ins. Co. v. Goodfellow*, 9 Mo. 149. The most satisfactory exposition of the law is to be found in the case of *New York & New Haven Ry. Co. v. Schuyler*, 34 N. Y. 30, from which Judge THOMPSON quotes in his opinion. It will be observed by a reference to the quotation that when the by-laws provide that stock can only be transferred on the books of the company, a sale and delivery of a certificate do not constitute the transferee a stockholder; that, as between him and the assignor, the title passes; but that, before it can be said that he is a stockholder, he must present his certificate to the company and have the stock transferred on the books; that, until this is done he is subject to none of the liabilities of a stockholder; neither does he acquire any of the rights of a stockholder until he has been recognized as such by the corporation; that, if he neglects to have the stock thus transferred to himself, and the owner of it on the books induces the corporation to issue a new certificate and makes a transfer to a second *bona fide* purchaser, then the latter acquires the title to the stock, and the first purchaser has *only* a right of action for damages against the corporation for making the transfer without requiring the original certificates to be surrendered. The foregoing is the recognized law in all the courts, so far as my

research has gone, except a mere *dictum* in the case of *Hall v. Road Co.*, 70 Ill. 673. This case is cited in the main opinion, and is relied on by my associates as asserting a contrary doctrine. The statement of the facts in the reported opinion is very meager and unsatisfactory. I gather from it that the real and only question in the case was, whether the plaintiff Hall or one Turner was the true owner of certain stock in the defendant company. Both parties claimed under the original stockholder. Just how or under what circumstances Turner became the owner of the original certificate does not appear. Hall had by some means induced the defendant to issue to him a new certificate, and to transfer the stock to him on the books. The only issue submitted to the jury was, whether the transfer to Hall was regular. The court in passing on the question said : "It was essential that the stock should have appeared by the record of the company or by a by-law to have been regularly issued. This was a suit by the person to whom the certificate was issued and he was bound to know whether the stock was legally transferred ; and his certificate informed him that such stock could only be transferred by record in the books of the company ; and while the certificate was *prima facie* evidence that it had been regularly transferred, still that was overcome by showing that it did not appear in the record of the proceedings of the company ; and to have restored his *prima facie* case he should have proved that the order for the transfer was in fact passed, but never reduced to record. This he attempted, but the jury found he had failed to do." The foregoing is all that the court decided. It is quite manifest that the decision fails to sustain the defendant's theory. In a preceding paragraph the judge made this loose remark : "The stock first issued, until taken up, or at least canceled, would be still valid and binding." This remark was not necessary to the decision of the case, and the court failed to support it by the citation of a single authority.

The only case cited by the defendant in support of its position, that is in any way analogous, is *Smith v. Mining Co.*, 1 Nev. 423. When the opinion in that case is examined, it will be found to contain good law, and it in no way helps the defendant. The circuit court ordered the defendant company to issue to the plaintiff certificates of its capital stock, although there was no pretense that any of the original certificates had been lost or destroyed, or that any of the certificates which had been issued to the stockholders were void. The supreme court very properly held that this action of the court, if carried out, would result in an over-issue of the defendant's capital stock, and, therefore, could not be sustained.

Unless the authorities cited in the opinion support the declaration that a court of equity will compel a corporation, under all circumstances, to recognize a *bona fide* holder of an uncanceled certificate as a stockholder, the defendant's plea of *ultra vires* is without any authority to support it.

The first case cited in the opinion is *Cushman v. Mfg. Co.*, 76 N. Y. 365. The question in issue was, whether the plaintiff or one Beals, who had obtained a transfer on the books of the company, was the true owner of certain stock in the defendant company. The court decided in favor of the plaintiff for the following reason: "Beals was a witness to the original assignment to the plaintiff; he was an officer of the company, and took the second transfer to himself with full knowledge of plaintiff's claim, for a very trifling consideration, and in fraud of plaintiff's rights as owner of the stock. In view of the facts Beals has no reason for questioning the plaintiff's title, and the defendant certainly has no valid grounds for claiming that Beals was the owner instead of the plaintiff."

In the case of *Iron Ry. Co. v. Fink*, 41 Ohio St. 321, I find the following state of facts: Fink was the purchaser from the residuary legatee of the original

stockholder; the stock was subscribed for in 1849; the original stockholder paid some of the assessments prior to his death in 1851; subsequently his administrators paid other assessments, but they neglected to pay the stock in full. Nothing further was done about the stock either by the company, the administrators or by the residuary legatee until 1873, when the legatee, who was the only heir, sold the stock to Fink, the defendant in error. Fink tendered the amount due on the stock together with interest, and demanded of the company the issuance of certificates to him, and he also asked for an accounting for dividends. The defendant refused to do either, and the supreme court merely held that a court of equity would compel the defendant to do both.

The next and last case cited is *Chew v. Bank*, 14 Md. 299. The facts in that case were substantially as follows: Certain stock of the defendant bank belonged to the estate of a deceased stockholder. The only heir was an imbecile. The administrator of the estate procured a power of attorney from the idiot, authorizing him to sell and have transferred on the books of the defendant company the stock standing in the name of his intestate. This power of attorney was presented to the defendant, and upon the faith of it the administrator was permitted to have the stock transferred to himself. Subsequently, the heir was declared to be of unsound mind, and a curator appointed to take charge of his estate. This action was brought by the heir through his curator to recover from the bank the value of the stock. The court held that the act of the lunatic in executing the power of attorney was an absolute nullity, and that the bank must account to him for the value of the stock, although it acted in good faith and without notice of the condition of the plaintiff's mind. The first and second cases were properly decided; whether the third is good law, it is not necessary for me to stop to discuss. It is sufficient for the purposes

of this case that none of the cases are authority for the proposition stated in the opinion.

My conclusion is that the defendant's plea of *ultra vires* is unsupported by the authorities, and must fall to the ground. Whenever a certificate of stock is lost or destroyed, and satisfactory evidence of the fact is produced, the corporation may reissue the certificate without subjecting itself to the charge of issuing more stock than the charter authorizes. But, in doing so, it asserts that the holder of the new certificate *is the stockholder*, and it incurs the risk of having to account in damages to any *bona fide* transferee for value of the original certificate. Hence in no case should the corporation issue, or be compelled to issue, new certificates, unless it is first reasonably indemnified by a good bond. The officers of a corporation, who act in a fiduciary capacity, would be justified in all such cases in refusing to act, until the owner of the lost certificate has, at his own expense, established the fact of such loss, and his right to another certificate, by the decree of a court of competent jurisdiction. Such a decree was entered in this case, but as I have shown, the circuit court failed to require a bond.

My associates and I do not disagree as to the right of a court of equity to assume jurisdiction in this case. The remedy undoubtedly is in equity and not at law. The matter of disagreement between us is the kind of decree and the form of the certificate, to which the plaintiff is entitled. I have no objection to the defendant writing in the certificates that they have been issued under the decree of the court, provided the right kind of a decree is entered. As I have heretofore stated, the plaintiff is entitled not only to a decree that his original certificates have been lost, but the court ought to go further and decide that, as between him and the defendant, he *is* and *must* be regarded as the *absolute owner* of the stock. It is only in this way that its market value can be maintained. Anything short of it would

discredit the plaintiff's title and prevent him from sell-
ing in the market.   In this case the plaintiff has asked
us for bread, and we have given him a stone.   The
opinion, together with the emasculated certificate which
it is proposed to issue, will deter any prudent business
man from buying his stock.

But it may be asked why not have the plaintiff to
indemnify a purchaser against this contingent liability,
rather than compel the defendant to assume the risk of
the continued solvency of bondsmen.   My answer is
this :   That a purchaser is not bound to buy ; he owes
the plaintiff no duty ; consequently, he will rightly
decline to take any risk, however remote it might be.
But not so with the defendant.   It stands in a fiduciary
relation to the plaintiff ; its officers are his trustees, and
it is their duty to relieve him as a stockholder from
loss, if it can be done without appreciable loss or
danger of loss to the other stockholders.

.The evidence in this case is so convincing, and
comes through such trustworthy channels, that it
appears to me that the risk, which would be assumed by
the issuance of a clean certificate to the plaintiff, would
be reduced to the remotest contingency.   It may be
true, as stated in the opinion, that the only direct pre-
cedent for the issuance of a new certificate is the case of
*Phillips v. Gaslight Co.*, 25 La. Ann. 413 ; but all the
analogies of law support the case.   Almost every day
the courts of this state render judgments upon lost
notes, and the only protection offered the makers is the
statute requiring suitable bonds to be given.   The mak-
ers must pay the judgments and take the risk of the
bondsmen becoming insolvent.   Our statute but follows
the equity practice which prevailed prior to its enact-
ment.   Before the enactment of the statute, an action
at law could not be maintained on a lost note.   The
owner's remedy was in a court of equity, where a recov-
ery was permitted, provided reasonable indemnity was
given.   *Eans v. Bank*, 79 Mo. 182.   It is upon the same

equity principle that I claim the plaintiff ought to be fully restored to all that he has lost. I can see no greater hardship in the one case than the other; nor can I see any difference in principle in the two classes of cases.

For the reasons stated, I am compelled to dissent from the disposition made of this case by my learned colleagues

### ON MOTION FOR REHEARING.

ROMBAUER, P. J.—The motion for rehearing, made in this case, presents no new points. But, as the case is one of commercial importance, I deem it proper to present some additional reasons for my concurrence in the opinion heretofore filed.

The plaintiff's claim, it seems to me, rests upon a misapprehension of the powers and duties of a court of equity. It is true that these courts have, since times immemorial, granted relief on lost instruments, but such relief never consisted of compelling the reissue of the instrument lost. The relief was always either a decree for discovery, where such was needed, or a decree for possession or payment, in the same manner as if the deed or bond were not lost. 1 Story Eq. Jur., secs. 81–89. It was, as far as I am aware, held only once that, in case of the loss of an instrument, the chancellor could *compel* the grantor, obligor or promisor to execute a duplicate original thereof to the grantee, obligee or promisee. That was in the case of *Chesapeake & Ohio Canal Co. v. Blair*, 45 Md. 108. There, a negotiable bond being lost, which had many years to run, the court compelled, upon grant of full indemnity, the reissue of the bond, in *non-negotiable* form, placing its decision mainly on the ground that the bond had a long time to run before it could be enforced, and, in the meantime, the evidence might be lost on which the party could recover. If a relief of a similar nature is accorded by

us in this case, it is on a like ground, and on the further ground that the defendant is willing to concede such relief, and that, to that extent, the decree which we have made is a decree by consent.

The plaintiff's claim is equally without foundation, if sought to be supported by any relation of trust between the corporation, or its officers, and himself. The duties of the corporation to its stockholders are defined by its charter and laws, and there is no pretense in this case that any of such duties have been violated, or are threatened to be violated. Neither the charter, nor the by-laws of the corporation, nor any law I am aware of, require the defendant to issue to the plaintiff new *original* certificates of stock, whenever he is careless enough, or unfortunate enough, to misplace or lose those which have been issued to him already. No rights of the plaintiff, as a member of the corporation, are in any way interfered with, or threatened; on the contrary, he is conceded to be now, as he always had been, in the full enjoyment of his rights and privileges, notwithstanding the loss of his certificate.

It is said that the plaintiff's certificate had a commercial value, and he is entitled to have that preserved. By this, I suppose, is meant that the certificate is *quasi* negotiable, and passes from hand to hand as an article of barter and sale. This equally applies to a note, bill of exchange, bond or other debenture. But has it ever been held that a party who misplaces or loses either of these is entitled to compel their reissue for the purpose of re-establishing his right of negotiation? Clearly not. The owner can, in equity, enforce their payment on giving indemnity, but not their reissue, and no case has been cited why the rule should be different in regard to the instrument in question.

While, therefore, no reason whatever is shown why a court of equity ought to grant the particular relief demanded, the most conclusive reasons are apparent why it should not grant it, even if it had the power

to do so.   No court of equity should, under any circumstances, lend its aid to the probable, or even possible, consummation of any fraud.   If these certificates of stock, as we are assured, pass from hand to hand as *reliable* representatives of the stock named therein, they do so because they *pretend to be* the only certificates evidencing the ownership of that particular stock.   When two certificates for the same stock are issued, of which one in its very nature is the duplicate of the other, the fact that it is such duplicate ought to be shown on its face ; otherwise, the negotiation of either is bound to result in the deception of some one.   *This holding is absolutely essential to the protection of the public confidence in these securities.* It is a wholly immaterial inquiry, whether the holder of the first, or the holder of the second certificate, is the true owner of the stock, or the real member of the corporation, because it is mathematically impossible that both should occupy that position.   Let it be once known, in a commercial community, that a man, by buying a certificate of stock, believing it in good faith to be the only certificate of that particular stock, buys either the stock or a lawsuit, according to the circumstance, whether the certificate is an original issue or its counterfeit multiple, and the commercial value of such certificates will be utterly destroyed.

The motion for rehearing is, with the concurrence of Judge THOMPSON, overruled.