F. B. BRADY, RESPONDENT, v. GEORGE W. KIRBY ET AL., APPELLANTS.*

Kansas City Court of Appeals.  December 2, 1929.

*Corpus Juris-Cyc. References: Banks and Banking, 7CJ, section 136, p. 534, n. 93; Bills and Notes, 8CJ, section 1349, p. 1034, n. 54; Judgments, 34CJ, section 859, p. 559, n. 86; Parties, 47CJ, section 391, p. 204, n. 6.

*T. C. Sparks, James H. Hull* and *H. G. Leedy* for respondent.

*Gresham & Gresham* and *Eastin & McNeely* for appellant.

BLAND, J.—This is a suit on a promissory note in the sum of $2500, dated Dearborn, Missouri, July 20, 1923, due six months after date, payable to the Bank of Dearborn and signed by the defendants as makers. The note bears the following indorsement upon the back thereof: "Bank of Dearborn by John W. Tays, Cashier."

At the end of all of the testimony the court refused defendants' instruction in the nature of a demurrer to the evidence and gave plaintiff's instruction directing a verdict for him. A verdict was accordingly rendered in favor of plaintiff in the amount of the note, interest and attorney's fees. Defendants have appealed.

The facts show that in 1918, the Dearborn Electric Light & Power Company, of which defendants were stockholders, borrowed $4500 from the Bank of Dearborn, giving its note for said amount with the present defendants as sureties thereon; that on or about July 20, 1923, there had been paid by these defendants on said indebtedness the sum of $2000, and accrued interest; that on that day a new note (the note in suit) for $2500, was given the Bank of Dearborn due six months after date, which note was signed by the defendants only.

On December 20, 1922, the Bank of Dearborn (hereinafter called the Bank) borrowed from the Commerce Trust Company of Kansas City (hereinafter called the Trust Company), the sum of $37,000, pursuant to a resolution shown in the minutes of a meeting of the board of directors of the bank held on December 16, 1922. This resolution did not mention anything about placing collateral with the Trust Company to secure the note, but did recite that the note to the Trust Company "carry the individual indorsements of the board of directors" of the Bank of Dearborn. Accordingly a note in the sum of $37,000, was given by the bank to the Trust Company indorsed by the directors of the bank. However, Mr. Tays, cashier of the bank, in connection with this loan, delivered to the Trust Company certain collateral of the bank to secure its note. There is no evidence of any authority given by the board of directors to Tays for the pledging of this or any other collateral. The Trust Company would permit the bank to substitute other collateral for collateral the latter had with the former, and on August 17, 1923, Tays pledged to the Commerce Trust Company the note in suit along with other notes totaling $11,670 to take the place of the notes the Trust Company then held as collateral. There is no evidence of any authority given by the board of directors of the bank to Tays to pledge the note in suit to the Trust Company. The note to the Trust Company had been renewed from time to time and various credits had been given thereon. On September 29, 1923,

the bank owed the Trust Company, on this and other loans, the sum of $60,000. On the last mentioned date the bank suspended and went into the hands of the Commissioner of Finance.

On December 31, 1923, the sureties on the note given to the Trust Company by the bank gave a new note to the Trust Company signed by themselves alone as individuals and not by the bank. This note was in the sum of $38,931.49, the net balance then due from the Bank of Dearborn to the Trust Company on all loans. This note was ultimately paid by the makers thereof on May 28, 1924, at which time the notes held by the Trust Company as collateral security, including the one in suit, were turned over to them by it. Thereafter these men who had signed the bank's notes to the Trust Company as sureties, executed a written instrument authorizing the plaintiff, as trustee, to bring action upon the note in controversy and the other notes received from the Trust Company.

Before bringing the present suit plaintiff, as such trustee, instituted a proceeding against the Bank of Dearborn and Frank C. Millspaugh, State Finance Commissioner in charge of the bank, in which a decree was entered subrogating plaintiff, as trustee, to all the rights and remedies of the Commerce Trust Company in and to the promissory note sued upon herein, as well as other collateral security which had been held by the Trust Company as aforesaid and granting him specific relief. A full description of that proceeding will hereinafter be made.

The answer to the present suit consists of a general denial and plea of payment of the note. In connection with this plea it is alleged that defendants signed as sureties the original note for $4500, given by the Dearborn Electric Light & Power Company to the bank, at which time the Light & Power Company was solvent; that at that time one W. H. Gabbert was cashier and director of the bank and also a stockholder and member of the board of directors of the Light & Power Company and secretary of said company; that after the execution of said note in the sum of $4500, a corporation was organized known as the Dearborn Iron & Power Company; that Gabbert became a stockholder, director and officer of this corporation; that the Iron & Power Company purchased the property and assets of the Light & Power Company and as a part of the transaction delivered to the bank forty-seven shares of the stock of the Iron & Power Company in payment of the $4500 note of the Light & Power Company to said bank; that the bank accepted said shares of stock in full payment of the indebtedness and, the note having been paid, defendants were discharged as sureties thereon; that the transactions between the Light & Power Company and the Iron & Power Company and the issuance of the forty-seven shares of stock in the bank in satisfaction of the note and the acceptance thereof

by the bank were handled and conducted by Gabbert in behalf of the Light & Power Company and the Bank of Dearborn; that thereafter the bank accepted dividends upon the stock; that subsequent to these transactions the bank, through its officers and agents, represented to the defendants that the indebtedness had not been paid and demanded payment from them; that relying upon such representations and without knowledge of the facts they paid the bank the sum of $2000, and interest and executed the note for $2500, sued upon herein; that the last mentioned note was thus procured by fraudulent representations of the bank; that the directors of the bank knew at the time the note was pledged to the Trust Company that it was not a subsisting and valid asset of the bank and knew that it had been procured by such false representations; that the parties whom the plaintiff represents did not pay the indebtedness of the bank to the Trust Company until after maturity of the note in suit and plaintiff is not entitled to be subrogated to the position occupied by the Trust Company as the holder of the note.

To the answer plaintiff filed a reply consisting of a general denial.

It is defendant's contention that the note in suit was not lawfully pledged as collateral by the bank to the Trust Company and that it was not so pledged as collateral to the note given to the Trust Company by the directors individually on December 31, 1923. In this connection it is contended that the directors of the bank, although they paid the bank's indebtedness to the Trust Company, are not entitled to recover on the note in suit for the reason that they could not be subrogated to any rights of the Trust Company which it did not lawfully have. It is also insisted by defendants that the beneficial plaintiffs herein, as directors of the bank, were charged with notice that the note in suit was pledged without authority and were further charged with notice that the note had theretofore been paid and was not a valid asset of the bank.

In support of the contention that the note was not legally pledged to the Trust Company defendants rely upon section 11762, Revised Statutes 1919, which provided, at the time of the alleged pledging of the note, that a cashier or other officer or employee of a bank should have no power to pledge any notes of a bank until ''authority shall have been given by the board of directors, a written record of which proceeding shall first have been made.''

We need not decide the question as to whether, in view of the statute, the note in suit was lawfully pledged to the Commerce Trust Company, for the reason that this question has been foreclosed by the Circuit Court of Platte County in a decree rendered by it in the suit by plaintiff against the bank and the Commissioner of Finance, to which we have alluded. In that decree it was established that plaintiff was the lawful holder of the note. Defend-

ants are now attempting to assert a right of the bank which was a party to that suit in which suit it was adjudicated that the bank had no such right. Consequently defendants are in no position to urge that there was no lawful pledge of the note in suit to the Commerce Trust Company or that it was not legally pledged as collateral to the note of December 31, 1923, given to the Trust Company by the directors alone.

Defendants object to the introduction of the pleadings and judgment in the case referred to and now strenuously contend that these records were not properly admitted in testimony and cannot be considered as having any bearing on the controversy. In the first place defendants claim they were not parties to those proceedings and had no notice of them. In this connection defendants cite the cases of Cravens v. Jameson, 59 Mo. 68; McLaren v. International Real Estate & Improvement Co., 126 Mo. App. 254; Luther v. Kinion, 200 Mo. App. 159, and similar cases. These cases hold, in effect, that the assignee of a right of property or chose in action is not concluded by a judgment for or against his assignor where his rights vested prior to the commencement of the action. However, it is well settled that such assignee is so concluded in a suit begun before the assignment. [See 34 C. J. 1018.] These authorities have no bearing upon the controversy now before us.

We think that it is immaterial whether or not the defendants were parties to the action between the plaintiff and the bank and the Commissioner of Finance for the reason defendants are now asserting, in effect, that the title to the note that they executed is in the bank for the reason that it was never lawfully pledged by the bank. How can defendants successfully make such a contention in view of the suit to which the bank was a party in which title was fixed in plaintiff? Of course, under the circumstances, if defendants are required to pay plaintiff there is no possibility of the bank being able to collect the note from them a second time.

It is not true that in every instance a party to the present action must have been a party, or in privity with a party, to the former action to make the judgment in the former action admissible against him in the present action. For instance it is well established that a judgment in certain personal action is not subject to attack except on the ground that the court rendering it had no jurisdiction or it had been obtained by fraud or collusion, or was erroneously and unlawfully entered up. In all other respects it is conclusive as to the relationship of debtor and creditor between the parties and the amount of the indebtedness and cannot be collaterally impeached by third parties in a subsequent suit, where such relation and indebtedness are called into question, whether they be in privity with a party to the suit in which such judgment was rendered or not.

[Sidensparker v. Sidensparker, 52 Me. 481, 489; Pabst Brewing Co. v. Jensen, 68 Minn. 293.] While these authorities are not directly in point they establish the proposition that a stranger to a judgment may be conclusively bound by it in some instances, and we are firmly of the opinion that such an instance is present in this case. For some other instances where a stranger to a suit is bound by the judgment rendered therein see 2 Black on Judgments, sections 607 and 609.

However, it is claimed that the former judgment now in controversy is available only by way of "estoppel by matters *in pais*," which must be pleaded and there was no such pleading in the case at bar. The judgment is pleaded in plaintiff's petition as evidencing his title to the note. Whether or not it is pleaded in such a way as to raise the question of estoppel w~ ~re not called upon to decide, for the reason that we are not hol^' g that the judgment in controversy is admissible upon any such ~eory. Therefore the case of Trauerman v. Lippincott, 39 Mo ~pp. 478, cited by the defendants is not in point. If the case wer ~o be disposed of on the ground of estoppel, of course, defendants would not be bound by the former judgment at all even though pleaded, unless they were parties or in privity with a party to the former suit. It is unnecessary for us to go into the question of estoppel in this case for the reason, as before stated, we are not basing our opinion upon any such doctrine, but upon the proposition that defendants assert a title in the bank when that title has been adjudged to be in the plaintiff for the purposes of the present case in a case in which the bank was a party. Defendants are in no position to assert a title in the bank which it has been adjudged and established the bank does not have. The former judgment was clearly admissible as evidence of plaintiff's title to the note.

However, it is claimed that the judgment in the other case is void upon its face. In this connection the record shows that the suit was brought against the bank and the Commissioner of Finance and had for one of its purposes the substitution of plaintiff as claimant for the Trust Company, which had theretofore filed a claim with the Commissioner of Finance in charge of the bank, which claim had been disallowed. The prayer of the petition prays that either plaintiff be substituted for the Trust Company or his claim be allowed against the bank with an order upon the Commissioner of Finance for the payment of same. It also prays for "such other and further relief in the premises as the court shall seem meet and proper." The answer of the commissioner substantially admits the foundation of plaintiff's claim but states that the former should be credited with the amount of the collateral that was received from the Trust Company by plaintiff, or that plaintiff should be required to surrender

to the commissioner the collateral and his claim allowed in such sum as the court might deem proper, not exceeding the sum of $27,896.31 (the amount the commissioner alleged had been paid to the Trust Company by the directors of the bank in discharge of the bank's indebtedness to it); that the commissioner was entitled to a set-off or counterclaim in the sum of $12,109, the amount of collateral that plaintiff held which was received from the Trust Company, the note in suit being among said collateral. The pleadings in that case admit that the directors paid the bank's indebtedness to the Commerce Trust Company.

The court entered a decree adjudging that plaintiff was entitled to be subrogated to the right of the Trust Company for the use and benefit of the directors of the bank as to the claims of the Trust Company against the bank. The court further decreed that the $35,000 note of the bank to the Trust Company was indorsed by the board of directors of the former and that they became secondarily liable to the Trust Company; that the Trust Company had realized on a part of the collateral security placed with it by the bank and the indebtedness of the bank to the Trust Company had thus been reduced to $27,896.31. The court further found that the plaintiff herein and therein was holding additional security for $12,109 and found that the claim of the plaintiff should be allowed in the sum of $27,896.31, and that "said claim should be reduced from time to time until said collateral security is realized upon." It was further adjudged that the claim of the plaintiff as trustee should be allowed as a charge against the bank in the sum of $27,896.31, and plaintiff was *directed to keep account of the moneys realized upon the collateral security in his hands* and report same to the Commissioner of Finance in charge of the bank from time to time, and that plaintiff's claim should be automatically reduced in accordance with such report, and the "said commissioner is directed to pay the said claim so allowed in the same manner and with like effect as similar or like claims allowed against said Bank of Dearborn." (Italics ours.) This was not merely a declaratory judgment as is claimed by defendants.

The record in those proceedings contains the recital that the bank entered its appearance and filed separate answer which consisted of a general denial. The decree recites that defendants (Bank of Dearborn and the Commissioner of Finance), appeared "by their attorneys." It appears from the decree that the attorneys for the commissioner and the bank were identical.

It is claimed that the bank was insolvent and therefore not *sui juris,* and being thus disabled could not waive summons or appear by attorney; that the board of directors were suspended and the directors, in fact, arrayed as opposing parties to that suit; that the

only person who had any authority to act for the bank was the Commissioner of Finance but he answered separately in his own name; that the record shows that the bank entered its appearance and waived summons; that this was not done by the commissioner, but purported to be the act of the bank itself, and that the bank also appeared in court by its attorneys, all of which it had no power to do; that the record shows that the commissioner waived summons and entered his voluntary appearance and filed his separate answer in his official capacity as a State officer; that being a State officer, a suit against him in his official capacity is a suit against the State, and such suits cannot be maintained except where permission is expressly given by statute which must be strictly construed; that the statutes give no one permission to bring suit against the Commissioner of Finance upon a claim against a defunct bank; that by the laws of 1921, page 394, section 4, he is given power to bring suits and defend in the name of the State of Missouri; that by section 11715, Revised Statutes 1919, he is given power to prosecute and defend suits in the name of the delinquent corporation or banker; that section 11720, provides for the filing of claims with the commissioner, and that a claimant whose claim has been duly filed and has not been allowed by the commissioner may institute and maintain an action thereon against such corporation or banker, but that it is no where provided that the commissioner himself may be sued on such a claim; that no permission having been given to bring such action against the commissioner, the proceedings were void because the state was a party and he could not confer jurisdiction by giving his consent.

While it is true that in form the bank and the commissioner made separate answers and the decree recites that both of them were before the court by their attorneys, an examination of the answer of the Commissioner of Finance shows that in fact he was making the defense on behalf of the bank. There is nothing in his answer remotely tending to show that he was making any other kind of a defense. Disregarding the form and looking only to the substance of the matter it is apparent that the commissioner was defending the suit on behalf of the bank and that the court rendered a judgment entirely in harmony with the answer of the commissioner. We need not pass upon the question as to whether the bank was capable of being a party to the proceedings or of taking the action that the record purports to show that it did take. The defect, if any, in the parties defendant in that action could have been taken advantage of only by demurrer therein (State of Mo. to the use of Saline Co. v. Sappington, 68 Mo. 454; Bulkley v. Iron Co., 77 Mo. 105), and the judgment cannot be collaterally attacked on the grounds assigned. [34 C. J., pp. 554, 559, 560.]

Defendants by testimony and offers of proof sought to show that the note in suit had been paid the bank in the manner alleged in their answer, except that there is no showing or contention that the board of directors of the bank had any actual knowledge of this fact, if it be a fact. There is a serious question as to whether or not the testimony offered by the defendants together with their offers of proof, which the court rejected, are sufficient to show payment of the note, but assuming that the note was paid we do not think there is any merit in the contention of the defendants (which substantially admits that the Trust Company was a holder without notice of the fraud alleged in the answer) that the directors of the bank did not take from the Trust Company as good a title as it held for the reason that they were members of the board of directors of the bank and because they were such must be held to have constructive notice or knowledge of everything that any other officer of the bank, including the cashier, obtained. Though perhaps having no bearing on the question, it may be proper to state that the cashier in question, W. H. Gabbert, had ceased his connection with the bank at the time the original note was given by the bank to the Trust Company.

We have no quarrel with Withers v. Lafayette Co. Bk., 67 Mo. App. 115, and like authorities relied upon by the defendants to the effect that knowledge coming to an officer or an employee of a bank acting as such is imputable to all other officers and employees of the bank in their capacities as such and while acting as such, but these authorities do not sustain their contention that such knowledge should be imputed to the officers of the bank while acting in their personal capacities and for themselves. While the resolution of the bank states that the pledged note to the Commerce Trust Company should "carry the individual indorsements of the board of directors" of the bank, and while it is true that this resolution, adopted by the board of directors, was in their capacity as directors and not as individuals, yet their compliance with the resolution, when they signed the note as sureties, was in their individual capacities and in such capacities they cannot be held to have notice of something that was within the knowledge of some other officer of the bank, but of which they had no personal knowledge. Few could afford to become an officer or an employee of a bank, some of which are large institutions with hundreds of employees, if they were to be held to have constructive notice, while attending to their own personal affairs, of everything every other officer or employee learned in their capacity as such. We therefore, hold that the directors of the bank were subrogated to the rights of the Trust Company in defendants' note and that, consequently, they obtained whatever title the Trust Com-

pany had to it as against the contention that they had constructive notice of the alleged fraud.

From what we have said it appears that there was no defense to this action and the court properly directed a verdict in favor of plaintiff.

The judgment is affirmed. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.